O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

CALIFORNIA COALITION
FOR WOMEN PRISONERS, et
al.,

                Plaintiffs,

      v.

SCOTT LEE, et al.,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 5:25-cv-00283-SP

**MEMORANDUM OPINION AND
ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS TO
DISMISS FIRST AMENDED
COMPLAINT AND GRANTING
LEAVE TO AMEND**

## I.

## INTRODUCTION

On May 2, 2025, plaintiffs California Coalition for Women Prisoners ("CCWP")
and Jane Doe Nos. 1-6, individually and on behalf of all women incarcerated at the
California Institution for Women ("CIW") from March 2017 to May 2024 who were
seen, scheduled to be seen, or requested gynecological or obstetric care by defendant Dr.
Scott Lee, filed a First Amended Complaint ("FAC") under 42 U.S.C. § 1983 against the
following defendants: Lee; 18 other current or former employees of the California
Department of Corrections and Rehabilitation ("CDCR") – James Elliot, Dr. Ken
Maxwell, Lavelle Parker, Jennifer Core, Mona Houston, Richard Montes, Molly Hill,

Rob Kettle, Luis Gonzalez, Mesveen Chand, Rosa Lopez, Kevin Anthony, Shereef Aref, Dr. Diana Toche, Angela Kent, Connie Gipson, Kathleen Allison, and Jeff Macomber (the "CDCR defendants"); and Doe Defendants.

Plaintiffs assert 15 causes of actions: (1) an official capacity claim for deliberate indifference in violation of the Eighth Amendment; (2) cruel and unusual punishment in violation of the Eighth Amendment; (3) supervisory liability for cruel and unusual punishment in violation of the Eighth Amendment; (4) an official and individual capacity claim for violation of the Fourteenth Amendment right to equal protection; (5) an official capacity claim for "Fourth Amendment Violation"; (6) unreasonable search and seizure and false imprisonment in violation of the Fourth Amendment; (7) supervisory liability for violation of the Fourth Amendment right to privacy; (8) violation of California Civil Code § 52.4 ("gender violence"); (9) violation of California Civil Code § 52.1 ("Bane Act"); (10) violation of California Civil Code § 51.7 ("Ralph Act"); (11) civil battery; (12) intentional infliction of emotional distress; (13) negligent infliction of emotional distress; (14) negligence; and (15) invasion of privacy. Plaintiffs pray for declaratory and injunctive relief, damages and penalties, and attorney's fees and costs.

On July 7, 2025, CDCR defendants filed a motion to dismiss ("CDCR MTD") and request for judicial notice ("CDCR RJN"). On July 9, 2025, defendant Lee filed an amended motion to dismiss ("Lee MTD") and a notice of joinder to the CDCR MTD ("Joinder").[1] On August 5, 2025, plaintiffs filed oppositions to the CDCR MTD ("Opp. CDCR MTD") and Lee MTD ("Opp. Lee MTD"). CDCR defendants filed a reply

---

[1] As identified below, Lee joins two of CDCR defendants' arguments: (1) CCWP should be dismissed for lack of standing; and (2) the Ralph Act claim should be dismissed for failure to allege factual allegations showing Lee's conduct was motivated by his perception of plaintiffs' sex. *See* Joinder. In Lee's motion to dismiss, Lee also states he joins in CDCR defendants' arguments that the state law claims (Claims Eight through Fifteen) must be dismissed for failure to comply with the Government Claims act and Jane Doe No. 5's claims are time barred. Lee MTD at 9. But CDCR defendants did not assert those arguments in their motion to dismiss. *See* CDCR MTD at 2, n.3.

("CDCR Reply") on August 11, 2025, and Lee filed a reply ("Lee Reply") on August 12, 2025.  The court held a hearing on the motions on August 26, 2025.

    For the reasons that follow, the court grants in part and denies in part CDCR defendants' motion to dismiss and Lee's motion to dismiss.

**II.**

**PARTIES AND ALLEGATIONS OF THE FIRST AMENDED COMPLAINT**

**A.**    **The Parties**

    **1.**    **Plaintiffs**

        a.    **CCWP**.  CCWP is a grassroots advocacy organization that challenges the prison industrial complex for the institutionalized violence it imposes on women, transgender people, and communities of color.  CCWP has over 1,000 members, including people who are currently and formerly incarcerated at CIW.

        b.    **Jane Doe Nos. 1-5**.  Jane Doe Nos. 1-5 are former inmates of CIW.

        c.    **Jane Doe No. 6**.  Jane Doe No. 6 is currently incarcerated at CIW.

    **2.**    **Defendants**

        a.    **Dr. Scott Lee**.  Lee was a gynecologist at CIW from around 2016 until either November 2023 or May 2024.  FAC ¶¶ 23, 227.  Lee is being sued in his individual capacity.

        b.    **James Elliot**.  Elliot is the Chief Executive Officer ("CEO") for the California Correctional Health Services ("CCHCS") at CIW and of CIW, and has served in the latter position since July 2010.  FAC ¶¶ 24, 36, 284.  Elliot is responsible for the operation of all CDCR medical departments, including ensuring that all gynecological care is safe and compliant with the Prison Rape Elimination Act ("PREA").  Elliot is being sued in both his individual and official capacities.

1    c.    **Dr. Ken Maxwell**.  Maxwell is the Chief Medical Officer ("CME")
2          and Chief Physician and Surgeon for CIW.  Maxwell is being sued in
3          his individual capacity.
4    d.    **Lavelle Parker**.  Parker is the current warden and CEO of CIW and
5          has served in that position since 2023.  As warden, Parker has
6          responsibility over the Investigative Services Unit ("ISU") at CIW.
7          Parker is being sued in both his individual and official capacities.
8    e.    **Jennifer Core**.  Core was the warden and CEO of CIW from 2022-
9          2023.  Core is being sued in her individual capacity.
10   f.    **Mona Houston**.  Houston was the warden and CEO of CIW from
11         2021-2022.  Houston is being sued in her individual capacity.
12   g.    **Richard Montes**.  Montes was the warden and CEO of CIW from
13         2019-2020.  Montes is being sued in his individual capacity.
14   h.    **Molly Hill**.  Hill was the warden and CEO of CIW from 2017-2019
15         (together with Parker, Core, Houston, and Montes, the "Warden
16         defendants").  Hill is being sued in her individual capacity.
17   i.    **Rob Kettle**.  Kettle was the associate warden of health care operations
18         at CIW at all relevant times.  Kettle is being sued in his individual
19         capacity.
20   j.    **Luis Gonzalez**.  Gonzalez was the PREA compliance manager at
21         CIW at all relevant times from January 2020 forward.  Gonzalez is
22         being sued in his individual capacity.
23   k.    **Mesveen Chand**.  Chand is a medical assistant at CIW and has served
24         in that position since 2020.  Chand is being sued in her individual
25         capacity.
26   l.    **Rosa Lopez**.  Lopez is a registered nurse at CIW.  Lopez has served
27         in that position since 2020.  Lopez is being sued in her individual
28         capacity.

4

m.   **Kevin Anthony**.  Anthony is an associate warden and the current PREA compliance manager.  Anthony is being sued in his official capacity.

n.   **Shereef Aref**.  Aref is the Regional Health Care Executive for the Southern Region and has served in that capacity since September 2021.  Aref is being sued in his individual and official capacities.

o.   **Dr. Diana Toche**.  Toche is the undersecretary of Health Care Services at CDCR.  Toche is being sued in her individual and official capacities.

p.   **Angela Kent**.  Kent is the associate director of Female Offender Programs Offender Programs and Services ("FOPS") of the Division of Adult Institutions.  Kent has supervisory authority over the warden at CIW.  Kent also serves as the PREA coordinator for CIW.  Kent is being sued in her individual and official capacities.

q.   **Connie Gipson**.  Gipson was the director of Adult Institutions from 2018-2023.  Gipson had supervisory responsibilities over FOPS and directly supervised its associate director.  Gipson is being sued in her individual capacity.

r.   **Kathleen Allison**.  Allison served as the CDCR Secretary from 2020-2022.  Allison is being sued in her individual capacity.

s.   **Jeff Macomber**.  Macomber has served as the CDCR Secretary since 2022.  Macomber is being sued in his individual and official capacities.

## B.   Factual Allegations

CIW currently incarcerates 1200 prisoners.  FAC ¶ 75.  It is the only women's prison in California that provides medical care to pregnant prisoners.  *Id.*  As early as 2016, CCHCS and CDCR had notice of complaints that a primary care physician was

performing abusive pap smears at CIW.  FAC ¶¶ 79-80.  An investigation was conducted and the physician returned to practice medicine at CIW at its conclusion.  FAC ¶ 82.

Lee began working at CIW in 2016 as the sole gynecologist, and remained in that position for seven years.  FAC ¶¶ 5, 84; *but see* FAC ¶ 23. Throughout his employment, the medical staff knew or should have known that inmates were refusing treatment from him and requesting a different gynecologist or outside care.  FAC ¶ 196.  In 2017, an inmate filed a lawsuit accusing Lee of preforming unwanted surgeries and mutilating her genitals.  FAC ¶ 88.  In 2022, Lee was reported to the Medical Board of California for sexually abusing a pregnant prisoner and delaying her transport to a hospital when she went into labor.  FAC ¶ 91.  For several years, the Inmate Advisory Council ("IAC"), which is comprised of inmates, heard widespread complaints about Lee and frustrations that correctional health administrators and/or the Warden's Office were ignoring the complaints.  FAC ¶ 95.  IAC members were also concerned that Lee's conduct caused many patients to deprive themselves of necessary gynecological care, including cervical cancer screenings.  FAC ¶¶ 95-96.  By 2023, the complaints about Lee were so widespread that the IAC repeatedly raised concerns about Lee over the course of several meetings with Elliot, Maxwell, Core, Hill, and Kettle.  FAC ¶ 97.  Elliot and Maxwell acknowledged awareness of the complaints for years, but advised that there was not anything they could do and stated Lee was the only certified OB-GYN available.  FAC ¶ 98.

The CDCR defendants failed to take appropriate actions and follow proper protocol in response to the allegations of abuse.  Kettle initiated a PREA investigation in 2023 and it was not until 2023 or 2024 that Lee was reported to the Office of Internal Affairs ("OIA") for investigation.  FAC ¶¶ 111, 253.

Among the actions Lee's patients complained about include: abusive pelvic exams and sexualized digital penetration, abusive procedures, coerced and unnecessary procedures, retaliatory withholding of medical treatment, and inappropriate, sexualized comments.  FAC ¶ 99.  As for the individual plaintiffs, they allege the following.

1     **1.    Jane Doe No. 1**

2         On December 13, 2022, Jane Doe No.1 had an appointment with Lee due to a rare

3     skin disease for which she required gynecological care.  FAC ¶ 101.  Jane Doe No. 1 and

4     Lee argued about the requested care, during which Lee was insulting and aggressive.  *Id.*

5     Jane Doe No. 1 became upset, left without receiving any care, but then returned after a

6     few minutes and agreed to an exterior examination.  FAC ¶¶ 101-02.  Despite assuring

7     Jane Doe No. 1 that he would only touch the upper part of her vagina, he jammed his

8     fingers into her vagina with such force that he tore her open, causing her intense pain that

9     made her body jerk.  FAC ¶ 103.  Lee's actions caused medical assistant Chand to gasp

10    and take a step back, but Chand did not do anything.  *Id.*  Lee then left the examination

11    table without providing treatment for Jane Doe No. 1's skin disease.  *Id.*

12        In July 2023, Jane Doe No. 1 reported Lee's conduct to associate warden Kettle,

13    who urged her to file a grievance.  FAC ¶ 105.  Jane Doe No. 1 filed a grievance on July

14    19, 2023 reporting Lee's actions and requesting a non-CDCR female gynecologist.  FAC

15    ¶¶ 105-06.  In response to the grievance, a nurse informed Jane Doe No. 1 she had to

16    schedule an appointment with Lee if she required further treatment.  FAC ¶ 106.

17        On July 28, 2023, RN Lopez called Jane Doe No. 1 to the gynecology office under

18    the guise of providing her medical care, but she instead conducted a vaginal examination

19    and questioned Jane Doe No. 1 about the scars on her vagina.  FAC ¶ 107.  Jane Doe No.

20    1 informed Lopez that Lee caused those scars.  *Id.*  CIW has not produced any medical

21    records reflecting this examination or the corresponding CDCR Form 7219 (Medical

22    Report of Injury) Lopez was to have completed.  FAC ¶¶ 107-08, 118-19.

23        On September 18, 2023, Jane Doe No. 1 was examined by a non-CDCR

24    gynecologist, who prescribed her a steroid cream after a visual examination.  FAC ¶ 109.

25    When Jane Doe No. 1 requested the prescribed steroid cream, CIW insisted she be

26    examined by Lee before the prescription would be filled so she filed another grievance.

27    FAC ¶ 110.  On October 2, 2023, Jane Doe No. 1 met with Kettle about Lee and his

28    refusal to fill her prescription, and Kettle initiated an investigation.  FAC ¶ 111.

On October 6, 2023, CIW gynecology sent Jane Doe #1 another appointment request.  FAC ¶ 112.  At a nurse's insistence, Jane Doe No. 1 spoke with Lee who stated he would not provide the steroid cream unless he examined her.  *Id.*  Jane Doe No. 1 did not receive the steroid cream until nearly one month after it was prescribed, after which her condition improved.  FAC ¶ 113.

In November 2023, the ISU interviewed Jane Doe No. 1 in response to her complaints, but did not inform her of the results of the investigation.  FAC ¶¶ 115-17.  ISU later retaliated against Jane Doe No. 1.  FAC ¶ 211.

### 2.    Jane Doe No. 2

In 2022, Jane Doe No. 1 informed Lee that she did not require a pap spear because she had a hysterectomy, but Lee insisted that she allow him to perform one to confirm she did not have a cervix.  FAC ¶ 121.  When Jane Doe #2 stated she preferred her primary care physician perform the pap smear, Lee became visibly angry and hostile, and made a sexually inappropriate comment.  FAC ¶¶ 122-23.  Jane Doe #2 refused to be physically examined by Lee because of his comments.  FAC ¶ 124.

Jane Doe No. 2 saw Lee twice more.  FAC ¶¶ 125-26.  At a subsequent appointment one month later, Lee was dismissive of Jane Doe #2's complaints of hot flashes.  FAC ¶ 125.  At an appointment a few months later, Jane Doe No. 2 told Lee that she refused to see him anymore.  FAC ¶ 126.  Jane Doe No. 2 then refused all further appointments with Lee for over three years.  FAC ¶ 127.

### 3.    Jane Doe No. 3

On June 9, 2023, Jane Doe No. 3 requested a refill of her birth control by injection, but Lee refused and became aggressive about giving her an intrauterine device ("IUD") instead.  FAC ¶ 129.  Jane Doe No. 3 felt that she had no choice but to agree.  FAC ¶ 131.

On August 18, 2023, Jane Doe No. 3 had an appointment for insertion of the IUD.  FAC ¶ 132.  Jane Doe No. 3 informed Lee and medical assistant Chand that she was anxious about the procedure and had an extensive history of sexual trauma.  *Id.*  She asked that Lee and Chand to announce any physical touching during the procedure.  *Id.*

Lee forcefully inserted the speculum without lubricant.  FAC ¶ 133.  When Jane Doe No 3 told him it hurt, he, with Chand's assistance, forced her legs open and inserted the IUD. *Id.*  The process caused Jane Doe No. 3 excruciating pain.  FAC ¶ 134.  Lee then continued to probe inside for about 10 minutes without explanation.  *Id.*

Jane Doe No. 3 experienced abdominal pain and pain when sitting, as well as had severe bleeding, but opted to endure the pain rather than have Lee see if the IUD was inserted correctly.  FAC ¶ 136.

In February 2024, Jane Doe No. 3 learned Lee was no longer at CIW and requested an appointment with a female gynecologist to have the IUD removed.  FAC ¶ 137.

### 4.    <u>Jane Doe No. 4</u>

In April 2023, while seven and a half months pregnant, Jane Doe No. 4 transferred to CIW and was seen by Lee.  FAC ¶ 139.  Lee refused to leave the room when Jane Doe No. 4 undressed.  FAC ¶¶ 140-41.  During the examination, Lee touched under Jane Doe No. 4's breasts and fondled around them.  FAC ¶ 142.  Lee pressed on her pelvic and vaginal areas with force, while dismissing Jane Doe No. 4's complaints of pain.  FAC ¶ 143.  Lee then inserted his fingers into Jane Doe No. 4's vagina, held her thigh, and said "Oh yeah, this is good" and asked who the father was.  FAC ¶ 144.  Lee then pumped his fingers in and out of Jane Doe No. 4's vagina in a sexualized and aggressive manner with such force that she moved back on the exam table.  FAC ¶ 145.  Jane Doe No. 4 asked Lee to stop, but he yelled at her to sit back down.  *Id.*  When he finally pulled his fingers out of her, they were covered in blood.  *Id.*  Chand was present during the exam but did not participate.  FAC ¶ 148.

Approximately one week later, Lee requested to reexamine Jane Doe No. 4.  FAC ¶ 150.  Lee again touched around her breasts and near her vaginal area.  *Id.*  When Jane Doe No. 4 asked questions about her pregnancy, Lee was dismissive and said, "I already explained to you."  FAC ¶ 151.  Then Lee insisted on another pelvic exam, but Lee refused.  FAC ¶ 152.

At later appointments, Jane Doe No. 4 attempted to document her refusal of care from Lee.  FAC ¶ 153.  On at least one occasion, at Lee's insistence, Jane Doe No. 4 signed a blank refusal form and allowed Lee to fill in the reason.  *Id*.

After Jane Doe No. 4 gave birth, she refused to be housed in the Outpatient Housing Unit because that was where Lee worked.  FAC ¶ 155.  Lee denied Jane Doe No. 4's reasonable accommodations for post-partum care, including a breast pump, post-partum pads, disposable bed pans, and a wheelchair.  FAC ¶ 156.  Consequently, Jane Doe No. 4 suffered extreme pain and discomfort, including severe breast engorgement, difficulty walking, and excessive bleeding, and was forced to sit saturated in blood whenever she was transported outside of CIW.  FAC ¶¶ 157-58.

### 5.    <u>Jane Doe No. 5</u>

Jane Doe No. 5 had seven to ten appointments with Lee over a three-year period beginning around April 2021.  FAC ¶¶ 160-61.  At the first visit, Jane Doe No. 5 told Lee that she thought she might have fibroids and Lee responded, "How are you going to tell me?  I am the doctor."  FAC ¶ 162.

Lee subjected Jane Doe No. 5 to invasive and sexualized exams.  *See* FAC ¶¶ 163-71.  At each appointment, Lee remained in the room while Jane Doe No. 5 undressed and used his fingers to examine her, including repeatedly inserting his fingers in and out of her vagina.  FAC ¶¶ 163-64.  Lee was also very aggressive in his use of a speculum and would jam it inside Jane Doe No. 5 in a rough manner, and would routinely remove and reinsert it in a sexualized manner.  FAC ¶ 165.  At almost every appointment, Lee claimed he needed to do a pap smear but never gave Jane Doe No. 5 the lab results.  FAC ¶¶ 169-70.  On multiple occasions, Lee would use his hand to spread her legs open.  FAC ¶ 164.  On at least one occasion, Lee examined Jane Doe No. 5's breasts in a sexualized and inappropriate manner, caressing and rubbing them with both hands at the same time.  FAC ¶ 166.

During several of Jane Doe No. 5's appointments, the nurse or medical assistant, including Chand, would exit and leave Lee unchaperoned with her.  FAC ¶ 168.  Even

when present, the nurse or medical assistant typically remained behind a desk and consistently failed to observe Lee's actions.  *Id*.

Jane Doe No. 5 attempted to refuse appointments with Lee, but he told her he was the only gynecologist at CIW.  FAC ¶ 167.  Eventually, Jane Doe No. 5 signed a refusal of care form.  FAC ¶ 171.

### 6.   Jane Doe No. 6

Jane Doe No. 6, a current inmate who suffers from fibroids and abnormal uterine bleeding, has had more than 10 interactions with Lee over a three to five-year period, the last in 2023.  FAC ¶ 173.  Typically, Lee remained in the room while Jane Doe No. 6 undressed.  FAC ¶ 176.  At almost every appointment, Lee performed an invasive procedure or exam, including a pelvic exam, pap smear, and/or biopsy, and then routinely failed to provide lab results or follow up treatments.  FAC ¶ 175.  Despite her requests to use a small speculum and be gentle, Lee used a large speculum and struggled to insert it into her, which caused her great extreme discomfort and pain.  FAC ¶ 178.  The biopsies were excessively painful compared to other ones Jane Doe No. 6 received.  FAC ¶ 182. At least once, Lee made Jane Doe No. 6 stand up from the exam table, put his fingers inside her vagina, and pressed on her stomach.  FAC ¶ 180.  On one occasion, Jane Doe No. 6 asked Lee to stop, but he forced her legs with such force that he left bruises on her thighs, and had a nurse help him hold her down in order to complete the biopsy.  FAC ¶ 183.  And once, Lee put his finger in Jane Doe No. 6's anus without explanation, warning, or consent.  FAC ¶ 184.

Lee was also routinely verbally hostile and inappropriate to Jane Doe No. 6.  FAC ¶ 178.  When Jane Doe No. 6 told Lee that the exams and procedures were excessive and unnecessary, he told her that "people like her" do not care about their health.  FAC ¶ 177. Jane Doe No. 6 asked Lee if he was referring to her race or gender, and Lee became hostile.  *Id*.  At one appointment, Lee told her that she would not have problems with abnormal uterine bleeding if she was not so fat, and said she should shave her pubic area

to avoid problems.  FAC ¶ 179.  Lee also asked what positions Jane Doe No. 6 had sex in, and raised his voice when confronted about the nature of the questions.  FAC ¶ 181.

Jane Doe No. 6 expressed her preference for a female gynecologist in writing but was told she cannot choose her own doctor.  FAC ¶ 186.  When Jane Doe No. 6 tried to refuse visits with Lee, Lee and his staff did not allow her to write in the reason for the refusal.  FAC ¶ 187.

Jane Doe No. 6 filed several grievances against Lee.  FAC ¶ 192.  Despite the grievances, CIW continued to set up appointments with Lee.  *Id.*

Lee engaged in acts of retaliation against Jane Doe No. 6.  FAC ¶ 191.  Lee included false information about the severity of her substance abuse in her medical chart. Consequently, Jane Doe No. 6 postponed her parole hearing.  *Id.*

## III.

## STANDARDS OF REVIEW

### A.    Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the court.  *Neitzke v. Williams*, 490 U.S. 319, 327 n.6, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989).  A federal court is one of limited jurisdiction and is presumed to lack jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994).  In considering a Rule 12(b)(1) motion to dismiss, a

court takes the allegations in the complaint as true.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  But the court is not restricted to the pleadings and may review other evidence to resolve factual disputes regarding jurisdiction.  *See Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) ("A jurisdictional challenge under Rule 12(b)(1) may be either on the face of the pleadings or by presenting extrinsic evidence."); *McCarthy v. U.S.*, 850 F.2d 558, 560 (9th Cir. 1988).  When a defendant challenges the jurisdiction of the court, plaintiff bears the

1    burden of establishing jurisdiction.  *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817,

2    818 (9th Cir. 1995).

3    **B.    Rule 12(b)(6)**

4        Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may

5    move to dismiss a complaint for "failure to state a claim upon which relief can be

6    granted."  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a

7    claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal for failure to

8    state a claim "can be based on the lack of a cognizable legal theory or the absence of

9    sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police

10   Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A court may not dismiss a complaint under

11   Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts

12   in support of his claims which would entitle him to relief."  *Barnett v. Centoni*, 31 F.3d

13   813, 816 (9th Cir. 1994).

14       "When there are well-pleaded factual allegations, a court should assume their

15   veracity and then determine whether they plausibly give rise to an entitlement to relief."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  A claim

17   "has facial plausibility when the plaintiff pleads factual content that allows the court to

18   draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

19   at 678.  This plausibility standard does not amount to a probability requirement, "but it

20   asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

21       "[T]he tenet that a court must accept as true all of the allegations contained in a

22   complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a

23   cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing

24   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929

25   (2007)).  The complaint must both "contain sufficient allegations of underlying facts to

26   give fair notice and to enable the opposing party to defend itself effectively . . . [and]

27   must plausibly suggest an entitlement to relief, such that it is not unfair to require the

28

opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**C.** <u>**Rule 12(f)**</u>

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice . . .." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (citations omitted).

**D.** <u>**Doe Defendants**</u>

As a general rule, the use of Doe defendants is not favored, but "where the identity of alleged defendants will not be known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Nonetheless, a plaintiff must still allege sufficient facts regarding the Doe defendants to state a claim. *See Estate of Hernandez v. Cnty. of San Diego*, 2024 WL 4357559, at *3 (S.D. Cal. Sept. 30, 2024); *Raines v. Lehigh Hanson Servs., LLC*, 2023 WL 6519311, at *3 (E.D. Cal. Oct. 3, 2023).

**IV.**

<u>**DISCUSSION**</u>

**A.** <u>**Requests for Judicial Notice**</u>

In support their motion, CDCR defendants request the court take judicial notice of publicly available information published by CCWP and various court filings from *Plata v. Brown*, no. C-01-1351 (N.D. Cal.).[2] Docket no. 52-2. In support of their opposition to the CDCR MTD, plaintiffs request the court take judicial notice of a declaration of Clark

---

[2] *Plata* was originally filed on April 5, 2001 as *Plata v. Brown*, and subsequently, each governor has been substituted as defendant in that case. *See* Case no. C-01-1351 (N.D. Cal.), docket no. 1.

Kelso, the *Plata* receiver, that was filed in *Anderson v. Kelso*, case no. 12-cv-00261 (E.D. Cal.). Docket no. 58-2.

On a Rule 12(b)(1) motion to dismiss, the court may consider extrinsic evidence. *See Warren*, 328 F.3d at 1139. On a Rule 12(b)(6) motion to dismiss, the court is limited to the pleadings, except that it may "take judicial notice of court filings and other matters of public records." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (a court may take judicial notice of matters of public record); *U.S. ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts may take judicial notice of proceedings in other courts if the proceedings have a direct relation to the matters at issue); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."). "But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Plaintiffs and CDCR defendants do not object to any of the exhibits. Because all the exhibits attached to the requests for judicial notice are matters of public record, the court will take judicial notice of the authenticity and existence of them.

## B. At This Stage, the Court Need Not Decide Whether CCWP Has Standing

Defendants argue the court should dismiss plaintiff CCWP and its claims because CCWP lacks standing to sue under Article III of the United States Constitution. CDCR MTD at 6-10; Joinder at 2. Specifically, defendants contend CCWP fails to satisfy the requirements for either organizational or associational standing to sue. CDCR MTD at 7-10. CCWP does not have organizational standing because it has not shown it suffered an injury in fact, and CCWP did not assert associational standing. *See id.* Plaintiffs dispute defendants' argument, and contend it fails in any event because if one plaintiff has standing – here, the Jane Does – the court need not decide CCWP's standing. Opp. CDCR MTD at 2-3.

"The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others." *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) (citing *Carey v. Population Servs. Int'l*, 431 U.S. 678, 682, 97 S. Ct. 2010, 52 L. Ed. 2d 675 (1977)); *see, e.g.*, *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022) (because one defendant sufficiently established standing, the court did not address the standing of the other plaintiffs); *Porter v. Bowen*, 496 F.3d 1009, 1019 n.11 (9th Cir. 2007) (acknowledging that two of the plaintiffs may not have standing to assert the First Amendment claim, but the other two plaintiffs plainly did); *Bear River Band of Rohnerville Rancheria v. Cal. Dep't of Soc. Servs.,* 2024 WL 1055849, at *4 (N.D. Cal. Mar. 11, 2024) (if at least one plaintiff has standing and can proceed on a claim, it "obviates the need to analyze whether each named plaintiff has standing"). This rule applies on a claim-by-claim basis. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439, 137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017) (a plaintiff must demonstrate standing for each claim and each form of relief); *Coalition on Homelessness v. City and Cnty. of San Francisco*, 758 F. Supp. 3d 1102, 1130 (N.D. Cal. Dec. 4, 2024) (analyzing whether individual plaintiffs had standing with respect to the claims in which the organization plaintiff did not have standing).

Here, defendants do not argue the Jane Doe defendants lack standing to raise any of the claims. Because there is no dispute the individual defendants have standing, the court need not decide whether CCWP has standing at this stage.[3] *See, e.g.*, *Bear River*

---

[3]    CDCR defendants contend plaintiffs did not assert associational standing, while plaintiffs argue they adequately pleaded facts that would support associational standing. *See* CDCR MTD at 9; Opp. CDCR MTD at 7. While the court need not reach the issue at this stage, the court notes that if associational standing is raised at a later stage, there is a general requirement to identify the affected members unless "it is clear and not speculative that member of the group will be adversely affected." *Mi Familia Vota v. Fontes*, 129 F. 4th 691, 708 (9th Cir. 2025); *see Satanic Temple v. Labrador*, 149 F. 4th 1047, 1050 (9th Cir. 2025).

*Band of Rohnerville Rancheria*, 2024 WL 1055849, at *5 (concluding it need not consider whether plaintiff tribe had standing at the pleading stage since defendants did not argue the individual plaintiffs lacked standing and the court did not independently identify any defect with its jurisdiction over the individual plaintiffs' claims); *Doe v. U.S. Dep't of Just.*, 650 F. Supp. 3d 957, 981 (C.D. Cal. 2023) (court need to reach the question of whether Doe #1 has standing because defendants appear to concede the other plaintiffs have standing and even if they did not so concede, the court "would have little trouble finding" that they do have standing); *W. Watersheds Proj. v. Bureau of Land Mgmt.*, 971 F. Supp. 2d 957, 968 (E.D. Cal. 2013) (because the parties do not dispute one plaintiff has standing, the court need not reach whether the other plaintiff has standing); *but see Los Angeles Waterkeeper v. Pruitt*, 320 F. Supp. 3d 1115, 1125-26 (C.D. Cal. 2018) (finding *Leonard* did not control because although "undisputed" by defendants, the court had not ruled on the standing of any of the plaintiffs).

Accordingly, the court now denies defendants' motion to dismiss CCWP for lack of standing.

## C.    *Plata* **Does Not Preclude Litigation of the Injunctive Relief Claims**

CDCR defendants contend the court should dismiss all claims seeking injunctive relief pertaining to medical care, as well as strike their supporting allegations, because they encroach upon the *Plata* class action, case no. C-01-01351 (N.D. Cal.).  CDCR MTD at 10-12.  CDCR defendants argue the *Plata* receiver oversees systemic reform of medical care in the California prison system and thus any relief seeking to change CIW's medical procedures and personnel practices, as well as health care grievance policies, infringe on the *Plata* court's jurisdiction.  *See id*.  Plaintiffs contend *Plata* does not preclude litigation of the claims in this lawsuit because they are not duplicative of *Plata*. Opp. CDCR MTD at 8-11.  Plaintiffs further assert that while there is minimal overlap, the *Plata* receiver lacks the authority to provide the injunctive relief requested because he delegated authority back to CDCR and his responsibilities are winding down.  *Id*. at 10-11.

In *Crawford v. Bell*, the Ninth Circuit addressed "whether dismissal of an individual complaint is proper when the complainant is a member in a class action seeking the same relief." 599 F.2d 890, 892 (1972). The Ninth Circuit found that a district court has the inherent power, "in the interests of the efficient and economical administration of justice," to decline jurisdiction and defer to the other court handling a prior case covering the same issues. *Id*. In other words, the district court may dismiss claims that duplicate the prior class action's allegations and relief sought, but may not go beyond the allegations and relief sought in the prior case. *Id*. at 893.

In order to determine whether plaintiffs' claims for injunctive relief duplicate *Plata*, the court "must first identify the relief sought and obtained by *Plata*." *Pride v. Correa*, 719 F.3d 1130, 1134 (9th Cir. 2013). The *Plata* class "consists of all prisoners in the custody of the [CDCR] with serious medical needs, except those incarcerated at Pelican Bay State Prison." CDCR RJN, Ex. I ("*Plata* Stipulation" or "*Plata* Stip.") ¶ 8. The *Plata* plaintiffs alleged they were "not receiving constitutionally adequate medical care as required by the Eighth Amendment" and defendants were not in compliance with the Americans with Disabilities Act and § 504 of the Rehabilitation Act. *Id*. ¶ 2. "Pursuant to the *Plata* Stipulation, the CDCR was required to implement the following policies and procedures: (1) hire medical staff; (2) staff registered nurses at emergency clinics 24 hours a day; (3) implement certain protocols and systems including protocols for interinstitution transfers and for treatment; and (4) provide special diets for patients with end-stage liver and kidney failure." *Pride*, 719 F.3d at 1134 (citing *Plata* Stip. ¶¶ 5-6).

After "the State failed to comply with the [*Plata* Stipulation]," the district court appointed a receiver to oversee the remedial efforts in 2006. *Brown v. Plata*, 563 U.S. 493, 507, 131 S. Ct. 1910, 179 L. Ed.2d 969 (2011); *see* CDCR RJN, Ex. J ("Order Appointing Receiver"). The receiver was "to take control of the delivery of medical services to California state prisoners" in order to bring the level of medical care provided to its inmates up to federal constitutional standards. Order Appointing Receiver at 1-2.

The receiver has "the duty to control, oversee, supervise, and direct all administrative,
personnel, financial, accounting, contractual, legal, and other operational functions of the
medical delivery component of the CDCR." *Id.* at 2.

Here, plaintiffs' allegations concern sexual misconduct perpetuated by a
gynecologist at CIW and assert three claims seeking injunctive relief – deliberate
indifference to the physical safety of Jane Doe No. 6 and CCWP (Claim One), equal
protection violation (Claim Four), and "Fourth Amendment Violation" (Claim Five).
Plaintiffs seek injunctive relief requiring Macomber, Toche, Aref, Kent, Elliot, Parker,
and Anthony to do the following at CIW: "(1) adopt regulations and/or policies
mandating that CIW have a full-time, OB-GYN of the gender preferred by the patient
available to its incarcerated population; (2) adopt regulations and/or policies mandating
the presence of a chaperone and support person (of the gender preferred by the patient)
for all gynecology exams and procedures; (3) require trauma-informed training for all
OB-GYN's and medical staff involved with gynecology care including PREA/SADEA
training and the definition of sexual misconduct as it applies to gynecology care, trauma-
informed gynecology care, and mandated reporter requirements for sexual abuse by
medical staff; (4) screen all patients for histories of trauma from sexual and physical
abuse and limit access to such information to medical staff only; (5) limit routine pelvic
and breast/chest exams on asymptomatic women with histories of trauma from sexual and
physical abuse to prevent retraumatization; (6) adopt policies requiring [CCHCS] to (a)
expedite the processing of health care grievances for allegations of sexual misconduct by
medical staff, (b) immediate removal of medical staff named as subjects pending
investigation into allegations of sexual misconduct, (c) immediate and simultaneous
reporting of all allegations of sexual misconduct by medical staff to the Warden, the
PREA Compliance Manager, the Associate Director of [FOPS], the Office of Internal
Affairs, and the Office of the Inspector General; (7) mandated training of all staff
involved in the processing of all health care grievances on staff sexual misconduct, the
definition of staff sexual misconduct, and the policies and procedures for expedited

handling of all allegations of sexual misconduct against medical staff; and (8) mandated
review process and tracking of all health care grievances filed at CIW for sexual
misconduct against medical staff." FAC at 112-113. These allegations, claims, and relief
sought do not encroach upon *Plata*.

First, the allegations and claims in this case are not duplicative of those in *Plata*.
*See Crawford*, 599 F.2d at 893 (noting district court was correct in dismissing those
portions of complaint that duplicated ones in a prior case). *Plata* concerned inadequate
medical care provided to those with serious medical needs. *Plata*, 563 U.S. at 507. This
case involves sexual abuse and inappropriate gynecological care by a physician at CIW,
and the failure of CIW and CDCR to respond to the abuse.

Second, the relief sought here is not duplicative to *Plata*. As discussed above, the
*Plata* class sought "systemic reform of medical care in the California prisons for inmates
with serious medical needs." *See Pride*, 719 F.3d at 1136. Subsequently, the *Plata*
receiver was given wide power to oversee all aspects of the delivery of medical services
to state prisoners, including hiring and operational functions in order to bring the general
level of medical care to all prisoners and up to minimum constitutional standards. Order
Appointing Receiver at 1-2. CDCR defendants appear to argue that anything touching
upon medical care falls under the Receiver's broad powers. But that is not the standard.
Arguably, there is some overlap between the relief plaintiffs seek here and in *Plata* –
specifically concerning the hiring and training of medical staff at CIW – but the overlap
in relief is minimal and the allegations are different. Thus, even if there is some
duplication, a court may dismiss an inmate's medical-related claims only if the inmate
seeks systematic relief *and* his allegations and relief sought duplicate *Plata*. *See Michelle
v. Cal. Dep't of Corrs. and Rehab.*, 2021 WL 1516401, at *13 (E.D. Cal. Apr. 16, 2021).

Moreover, the receiver delegated his authority over CIW back to CDCR in March
2017. Docket no. 28; *see* FAC ¶¶ 281-82. Given that the receiver no longer has
authority over CIW, any relief sought is not duplicative of *Plata*.

Accordingly, *Plata* does not preclude litigation of the injunctive relief claims.

CDCR defendants also assert in conclusory fashion that Toche and Aref should be dismissed because it would be consistent with the stipulated dismissal of Kelso, the *Plata* receiver, in this case. CDCR MTD at 12; *see* docket no. 28. CDCR defendants appear to imply Toche and Aref have the same duties as Kelso and thus should be dismissed on that basis. *See* CDCR MTD at 12. But the stipulated dismissal does not expressly state why Kelso was dismissed from this case, instead stating that Kelso delegated his responsibilities over medical care at CIW back to CDCR in March 2017. *See* docket no. 28. Nor do CDCR defendants adequately explain why the same reasoning would apply to Aref and Toche. Plaintiffs' opposition suggests that Kelso was dismissed because he is entitled to certain immunities as the *Plata* receiver. *See* Opp. CDCR MTD at 11. CDCR defendants have not established that Toche and Aref share the same duties and immunities as Kelso. Indeed, the FAC alleges Toche and Aref are CDCR employees. FAC ¶¶ 36-37. As such, the court denies CDCR defendants' motion to dismiss Toche and Aref on this basis.

The court therefore denies CDCR's motion to dismiss and strike the injunctive relief claims and allegations based on *Plata*.

## D.    Official Capacity Claims

Plaintiffs assert three official capacity claims – (1) Eighth Amendment violation (Claim One) against Elliot, Macomber, Toche, Kent, Parker, and Anthony; (2) Fourteenth Amendment equal protection violation (Claim Four) against Macomber, Gipson Toche, and Aref; and (3) Fourth Amendment violation (Claim Five) against Elliot, Macomber, Toche, Aref, Kent, Parker, and Anthony – for the purpose of obtaining injunctive relief at CIW and CDCR.[4] Although CDCR defendants do not specifically address these claims as official capacity claims in their motion to dismiss, the court does so here.

[4]    Under the Eleventh Amendment, states and governmental entities are immune from § 1983 suits for money damages. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-66, 70, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). However, prospective relief against a state official in his or her official capacity (as opposed to the state itself or one of its departments or agencies) is not barred by the Eleventh Amendment. *See*

1   Official capacity suits are "another way of pleading an action against an entity of

2   which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436

3   U.S. 658, 690 n.55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  As such, an "official-

4   capacity suit is, in all respects other than name, to be treated as a suit against the

5   entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114

6   (1985); *see also Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878

7   (1985); *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).  Here, each of

8   these defendants are employees of the CDCR so the entity is the State of California.

9   To plead an official capacity claim, a plaintiff must allege defendants committed a

10  constitutional violation based on policy or longstanding practice or custom.  *Hafer v.*

11  *Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991) (in an official capacity

12  suit, the entity's policy or custom must have played a part in the violation of federal law).

13  "A plaintiff seeking injunctive relief against the State is not required to allege a named

14  official's personal involvement in the acts or omissions constituting the alleged

15  constitutional violation."  *Hartmann v. Cal. Dep't of Corrs. and Rehab.*, 707 F.3d 1114,

16  1127 (9th Cir. 2013).  "Rather, a plaintiff need only identify the law or policy challenged

17  as a constitutional violation and name the official within the entity who can appropriately

18  respond to injunctive relief."  *Id.*; *see Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185

19  (9th Cir. 2006) ("A policy can be one of action or inaction.").  But a plaintiff must also

20  allege that the policy or custom was the cause in fact or proximate cause of the

21  constitutional violation.  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

22  Because official capacity claims are treated as a suit against the entity, it is

23  redundant to name multiple employees of the same agency.  *See, e.g., Aguirre v. Barger*,

24  2023 WL 2975159, at *3 (C.D. Cal. Apr. 17, 2023); *Castle v. Soto*, 2015 WL 13919115,

25  at *2 (C.D. Cal. Jul. 9, 2015).  Thus, to the extent that these claims survive the motion to

26
27  *Milliken v. Bradley*, 433 U.S. 267, 289, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977); *Ex Parte*
    *Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).
28

dismiss, the claims against Elliot, Toche, Kent, Parker, Anthony, Gipson, Allison, and Aref in their official capacity will be dismissed.[5]  Macomber, as the Secretary of the CDCR, has authority over all of these defendants (to the extent they are still employed by CDCR) and will be the defendant to respond.

### 1.   Eighth Amendment – Deliberate Indifference (Claim One)

In Claim One, plaintiffs CCWP and Jane Doe No. 6 allege Eighth Amendment violations under a theory of deliberate indifference to their physical safety.  Plaintiffs allege defendants Elliot, Macomber, Toche, Kent, Parker, and Anthony, in their official capacity, have a duty to ensure the conditions of confinement do not violate the Eighth Amendment but were deliberately indifferent and acted with reckless disregard to their physical safety by failing to, among other things: (1) properly monitor, oversee, and administer CIW's compliance with PREA and the Sexual Abuse in Detention Elimination Act ("SADEA"); (2) comply with California Penal Code § 3430; (3) properly investigate and respond to investigations of sexual misconduct by Lee, Chand, and Lopez; and (4) properly screen, train, and supervise CIW staff.  FAC ¶ 309.

CDCR defendants argue the court should dismiss Claim One because plaintiffs failed to oppose their motion to dismiss it.  CDCR Reply at 10; *see* CDCR MTD at 13-15.  At the hearing, plaintiffs asserted their opposition arguments concerning Claim Three also apply to Claim One.  Plaintiffs' opposition to the CDCR MTD does not contain language to support this contention.

Normally, "'[a] plaintiff who makes a claim . . . in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss . . . , has effectively abandoned his claim, and cannot raise it on appeal.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 877, 888 (9th Cir. 2010) (quoting *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)); *see Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to

---

[5]   The FAC is inconsistent as to whether defendants Gipson and Allison are sued in their official as well as individual capacity.  *See* FAC ¶¶ 39-40, 335.

respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.") (citation omitted).  But CDCR defendants' arguments for dismissal are inapplicable to Claim One.  CDCR defendants argue Claim One fails to state a claim for supervisory liability.  Claim One, however, is an official capacity claim.  Under these circumstances, while plaintiffs failed to respond to CDCR defendants' arguments, the court will not find that plaintiffs abandoned Claim One.

Because CDCR defendants' arguments to dismiss Claim One are inapplicable, the court denies their motion to dismiss Claim One.

### 2.    Fourteenth Amendment – Equal Protection (Claim Four)

In Claim Four, plaintiffs allege Macomber, Allison, Gipson, Toche, and Aref, in both their official and individual capacities, intentionally discriminated against them on the basis of their gender.  FAC ¶¶ 335, 341.  CDCR defendants' raise arguments to dismiss this claim against these defendants generally, which the court discusses below.  Defendants' arguments do not address the official capacity aspect of Claim Four.  *See* CDCR MTD at 16-17.  The court therefore need not discuss whether plaintiffs properly pleaded an official capacity equal protection claim.  Here, the court simply notes that Jane Doe Nos. 1-5 may not assert an official capacity claim for injunctive relief because they are no longer incarcerated.  *See Cooney v. Edwards*, 971 F.2d 345, 346 (9th Cir. 1992) (claims for injunctive relief are moot once the plaintiff is no longer incarcerated).

### 3.    Claim Five

In Claim Five, plaintiffs CCWP and Jane Doe No. 6 allege Elliot, Macomber, Toche, Aref, Kent, Parker and Anthony, in their official capacity, violated plaintiffs' Fourth Amendment rights.  CDCR defendants assert the FAC fails to state a cognizable legal theory under this claim or allege sufficient facts to state a cognizable claim.[6]  Specifically, CDCR defendants note the allegations appear to state an Eighth

---

[6]    Although an official capacity claim, CDCR defendants mischaracterized it as a supervisory liability claim.

Amendment, and not a Fourth Amendment, claim.  Plaintiffs concede Claim Five should be dismissed, but request leave to amend.  Opp. CDCR MTD at 19.  As such, the court dismisses Claim Five.

Accordingly, with regard to the official capacity claims, the court denies CDCR defendants' motion to dismiss Claim One and grants their motion to dismiss Claim Five.

## E. <u>Supervisory Liability Claims</u>

Plaintiffs allege defendants Elliot, Maxwell, Parker, Core, Houston, Montes, Hill, Kettle, Gonzalez, Aref, Toche, Kent, Gipson, Allison, Macomber, and Doe Defendants 1-20 are liable for Lee's sexual misconduct under a theory of supervisory liability. Plaintiffs allege supervisory liability claims for violations of the: (1) Eighth Amendment – cruel and unusual punishment – against Elliot, Maxwell, Macomber, Toche, Kent, Warden defendants, Kettle, Gonzalez, and Doe defendants (Claim Three); (2) Fourteenth Amendment – equal protection – against Macomber, Allison, Gipson, Toche, and Aref (Claim Four); and (3) Fourth Amendment – right to privacy – against Elliott, Maxwell, Macomber, Gipson, Allison, Kent, the Warden defendants, Kettle, Gonzalez, and Doe defendants (Claim Seven).

 "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citations omitted); *see Iqbal*, 556 U.S. at 676 (liability under § 1983 requires personal involvement and "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").  "An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between the supervisor's wrongful conduct and the constitutional violation.'" *Felarca v. Birgeneau*, 891 F.3d 809, 819-20 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207); s*ee Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (the causal link between the supervisorial defendant and the claimed constitutional violation must be specifically

alleged).  "The requisite causal connection can be established . . . by setting in motion a
series of acts by others or by knowingly refusing to terminate a series of acts by others,
which the supervisor knew or reasonably should have known would cause others to
inflict a constitutional injury."  *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 798 (9th
Cir. 2018) (cleaned up and citation omitted); *see Crowley v. Bannister*, 734 F.3d 967, 977
(9th Cir. 2013) ("supervisory liability exists even without overt personal participation in
the offensive act if supervisory officials implement a policy so deficient that the policy
itself is a repudiation of constitutional rights and is the moving force of a constitutional
violation") (cleaned up and citation omitted).  "A supervisor can be liable in his
individual capacity for his own culpable action or inaction in the training, supervision, or
control of his subordinates; for his acquiescence in the constitutional deprivation; or for
conduct that showed a reckless or callous indifference to the rights of others."  *Starr*, 652
at 1208; *Menotti v. City of Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005) (supervisor can
be liable for culpable indifference).

### 1.    <u>Eighth Amendment – Cruel and Unusual Punishment (Claim Three)</u>

In Claim Three, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Eighth Amendment
violations by Elliot, Maxwell, Macomber, Toche, Kent, the Warden defendants, Kettle,
Gonzalez, and Doe Defendants in their individual capacity under a theory of supervisory
liability.  Specifically, plaintiffs allege these defendants had a duty to ensure plaintiffs
were not the subjects of sexual assault or other wrongful acts by Lee as alleged in the
FAC.  FAC ¶ 326.  Plaintiffs allege these CDCR defendants were deliberately indifferent
and acted with reckless disregard toward plaintiffs' right to be free from cruel and
unusual punishment based on: (1) Elliot, Maxwell, Warden defendants, Kettle, and
Gonzalez's failure to properly respond to allegations of sexual misconduct against Lee
and others; (2) Elliot and Maxwell's refusal to take review and disciplinary actions
against Lee and other medical staff who sexually abused CIW prisoners; (3) Elliot,
Maxwell, Macomber, Toche, Kent, Warden defendants, Kettle, and Gonzalez's failure to
take action to prevent harm to CIW patients; (4) Elliot, Maxwell, Warden defendants,

Kettle, and Gonzalez's deliberate indifference to their responsibilities as members of the Institutional PREA Review Committee and the enforcement of PREA and SADEA; and (5) Elliot, Maxwell, Warden defendants, Kettle, and Gonzalez's deliberate indifference to plaintiffs' right to be free from sexual abuse and to have safe, non-abusive gynecological care.[7]  FAC ¶ 329.

In their Opposition, plaintiffs categorize Claim Three as consisting of two components: (1) "on the custody side," claims for cruel and unusual punishment – staff sexual abuse and failure to protect – against Warden defendants, Kettle, Gonzalez, Anthony, Kent, Gipson, Allison, and Macomber; and (2) "in the area of correctional health," claims for deliberate indifference towards dangerous gynecological care and failure to protect against Elliot, Maxwell, Aref, and Toche.  Opp. CDCR MTD at 12.  But plaintiffs' characterization of Claim Three is confusing and inconsistent with the FAC itself.  Most apparent, Claim Three does not include defendants Anthony, Gipson, Allison, and Aref.  And the allegations do not fall into the two categories as plaintiffs assert but instead are accurately summarized above.

The Eighth Amendment requires prison officials take reasonable measures to guarantee the safety of inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)); *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) ("Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.").  An Eighth Amendment claim requires: (1) the deprivation or harm suffered by the prisoner must be objectively "sufficiently serious"; and (2) the official must have a "sufficiently culpable state of mind," that is one of deliberate indifference to the prisoner's health and safety.  *Farmer*, 511 U.S. at 834 (quotation marks and citation omitted).  Sexual abuse of an inmate by a

---

[7]     Each of these allegations are also against Doe Defendants.

prison official violates the Eighth Amendment.  *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Ci. 2012).

Assuming the FAC alleges a sufficiently serious harm or constitutional violation, few of the factual allegations establish that defendants acted with deliberate indifference to plaintiffs' safety.  As recounted above, the FAC does not allege any facts demonstrating personal involvement by any of the Claim Three defendants in any of the alleged constitutional violations.  Instead, Claim Three concerns the alleged failure to properly respond to allegations of misconduct by Lee.  "[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."  *Starr*, 652 F.3d at 1207.  Defendants could not have recklessly disregarded complaints about Lee if they were not aware of them.  Thus, at bottom, plaintiffs must allege facts demonstrating knowledge.

As a whole, the FAC lacks sufficient facts.  Although the FAC contains specific factual allegations about Lee's actions toward Jane Doe Nos. 1-5, it is nearly devoid of facts about what these defendants knew about Lee's conduct.  Instead, the FAC primarily relies on general allegations concerning each defendants' responsibilities and conclusory allegations that defendants heard about or should have known about "widespread complaints" about Lee's "abusive conduct."  *See, e.g.,* FAC ¶¶ 220-45.  "General references to the job responsibilities and duties of a defendant's position are insufficient to state a claim for supervisory liability."  *Dominic v. Cal. Dep't of Corrs. & Rehab.*, 2023 WL 2089308, at *4 (E.D. Cal. Feb. 17, 2023); *see Mounce v. Vitt*, 2024 WL 52999, at *6 (D. Or. January 4, 2024) (general statements about job duties and responsibilities cannot establish supervisory liability); *Rodriguez v. Singh*, 2023 WL 36160, at *6 (E.D. Cal. Jan. 4, 2023) (same); *Marquez v. McEwen*, 2016 WL 4726566, at *9 (C.D. Cal. Aug. 10, 2016) (same).

Conclusory allegations of knowledge are similarly insufficient – plaintiffs must allege facts about what complaints were relayed and when.  *See, e.g., Lopez v. Cnty. of*

*San Bernardino*, 2020 WL 2027597, at *4 (C.D. Cal. Feb. 13, 2020) (allegations that
defendants "knew or reasonably should have known" did not give rise to supervisory
liability); *Green v. Rodriguez*, 2025 WL 2732506 (E.D. Cal. Sept. 25, 2025) (conclusory
allegations that defendant did not properly investigate and claims against officer were
"well known" were insufficient); *Sullivan v. Biter*, 2017 WL 1540256, at *1 (E.D. Cal.
Apr. 28, 2017) ("Conclusory allegations that various prison officials knew or should have
known about constitutional violations occurring against plaintiff simply because of their
general supervisory role are insufficient to state a claim."); *Medina v. Morris*, 2011 WL
13173569, at *8 (S.D. Cal. Apr. 5, 2011) (allegations that defendants knew of the
grievances and assaults, but not what exactly they knew, when they knew it, and what
actions they failed to take do not show knowledge or risk and deliberate indifference).
Instead of allegations of what information was conveyed and when, the FAC is replete
with allegations about unspecified complaints made prior to Lee's employment and about
Lee that these defendants "knew or should have known" about and failed to take proper
action.

Thus, plaintiffs have failed to state a claim of deliberate indifference to cruel and
unusual punishment against most of the named defendants.  The court addresses the
allegations specific to each of these defendants as follows.

### a.  Defendants Elliot and Maxwell

The FAC contains three sets of allegations specific to Elliot and Maxwell.
Construing the allegations in the light most favorable to plaintiffs, they are sufficient to
survive the motion to dismiss.  *See Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020,
1025 (9th Cir. 2021).  First, the FAC alleges Elliot and Maxwell (as well as Hill) failed to
initiate a PREA investigation after an inmate filed a grievance and complaint against Lee
in 2017.  FAC ¶¶ 88-90.  It is a close call whether the 2017 complaint that Lee had
mutilated the inmate's genitals during a biopsy concerned sexual abuse, as opposed to
simple malpractice.  But the court finds plaintiffs adequately alleged Elliot and Maxwell
knew about a sexual abuse claim and failed to initiate a PREA investigation or take other

appropriate action. *See* FAC ¶¶ 89-90. Second, plaintiffs allege that, in 2022, an inmate reported Lee to the Medical Board of California for sexual abuse of a pregnant prisoner and Elliott and Maxwell should have known about these allegations but failed to take any action to protect other prisoners. FAC ¶ 91. These allegations also adequately allege an Eighth Amendment claim. Third, plaintiffs allege the IAC reported Lee's abuse to Elliot and Maxwell in 2023, and they acknowledged they had been aware of the complaints against Lee but advised there was nothing they could do. FAC ¶¶ 97-98. Although plaintiffs fail to plead what the IAC actually conveyed to Elliot and Maxwell in 2023 or the exact nature of the complaints Elliot and Maxwell were aware of, plaintiffs adequately allege that Elliot and Maxwell knew of complaints of Lee's abusive conduct but failed to take action. Finally, plaintiffs adequately allege Elliot and Maxwell's failure to take proper actions allowed Lee to continue his sexual abuse at CIW.

The FAC therefore adequately alleges a deliberate indifference claim based on supervisory liability against Elliot and Maxwell.

### b. Defendants Macomber, Toche, Kent, and Gonzalez

Plaintiffs allege Macomber, Toche, Kent, and Gonzalez knew that CIW patients, including Jane Doe Nos. 1-5, were repeatedly subjected to sexual abuse by staff and recklessly disregarded their rights. But plaintiffs simply allege these defendants' general responsibilities and duties, and do not allege any facts demonstrating Macomber, Toche, Kent, and Gonzalez knew or reasonably should have known about Lee's alleged abuse. For example, while plaintiffs may be correct that Gonzalez, as PREA compliance manager, should have known about complaints about Lee, plaintiffs do not allege any facts to support this conclusory allegation. Again, allegations of general responsibilities are insufficient to state a claim against Macomber, Toche, Kent, and Gonzalez.

//

//

### c.   **Warden Defendants**[8]

The FAC primarily lumps the Warden defendants together in collective allegations rather than making specific allegations about each Warden defendant. *See, e.g,* FAC ¶¶ 226-27, 245-52; *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (a plaintiff must allege the basis of his claim against each defendant and not lump them together in broad allegations). "Conclusory allegations that an indistinguishable group of defendants essentially engaged in identical misconduct, however, are insufficient to show that plaintiff is entitled to relief from any *individual* defendant." *Williams v. Cnty. of Los Angeles Dep't of Pub. Soc. Servs.*, 2016 WL 8730914, at *5 (C.D. Cal. May 2, 2016).

The few specific allegations against the Warden defendants concern Houston, Core, and Hill.  CDCR defendants argue plaintiffs have not alleged these defendants acted with a sufficiently culpable state of mind.  But in a supervisory liability claim, plaintiff may meet the pleading standards with allegations of knowledge and acquiescence. *See Starr*, 652 F.3d at 1207.  First, as discussed above, plaintiffs' allegations that Hill was aware of a 2017 genital mutilation complaint against Lee and failed to act are sufficient to state a claim.  FAC ¶¶ 88-90.  Second, plaintiffs allege Houston, Core, and Hill knew or should have known about an inmate's 2022 report to the Medical Board of California that Lee sexually abused her when she was pregnant and delayed transport to the hospital when she went into labor, but failed to take appropriate action.  FAC ¶ 91.  The allegations about the 2022 report to the Medical Board are sufficient to state a claim against Houston and Core.  But Hill was warden from 2017 through 2019 so it is not plausible that Hill would be aware of the 2022 report.  FAC ¶ 30.  Finally, plaintiffs allege the IAC repeatedly raised concerns about Lee to Core and Hill in 2023.  FAC ¶ 97.  With respect to the allegations about the IAC reports, plaintiffs

---

[8]   In CDCR defendants' motion to dismiss, Hill is not included in the section arguing for dismissal of claim three. *See* CDCR MTD at 15-16.  But based on the content of the argument and the Reply, the court assumes the omission was a typographical error and so considers the adequacy of the allegations against Hill.

1    simply allege Core was told of the unspecified concerns and do not allege that Core failed

2    to take appropriate actions after learning about the alleged misconduct.  *See* FAC ¶¶ 97-

3    98.  And again, the allegations against Hill are not plausible given her tenure ended in

4    2019.

5         The FAC does not contain any specific allegations about Parker and Montes and

6    thus fails to state a claim against either.  Moreover, even assuming the allegations that the

7    Warden defendants knew about the allegations against Lee as early as 2017 but did not

8    report him to the OIA for investigation until 2023 or 2024 were sufficient to establish

9    knowledge, the FAC would still fail to state a personal capacity claim against Parker.

10   FAC ¶ 253.  Parker did not become warden until 2023.  FAC ¶ 26.  As such, the

11   allegations of the FAC establish that Lee was reported for investigation when or shortly

12   after Parker becoming Warden.  These factual allegations therefore fail to establish

13   reckless disregard by Parker.

14        Accordingly, the FAC states an Eighth Amendment deliberate indifference claim

15   against Hill, Core and Houston, but not against Montes and Parker.

16              **d.    Kettle**

17        Plaintiffs sufficiently allege Kettle knew about Lee's conduct toward Jane Doe # 1

18   and the 2023 IAC concerns about Lee, but fail to allege facts showing reckless disregard

19   or a causal connection between Kettle's actions and Lee's misconduct.  FAC ¶¶ 96-97,

20   105, 111.  With regard to Jane Doe No. 1, although the FAC alleges Kettle improperly

21   reported the allegations against Lee to the ISU rather than the OIA as required by CDCR

22   policy, it also alleges Kettle encouraged Jane Doe No. 1 to file a grievance, initiated a

23   PREA investigation, and reported the allegations to the ISU pursuant to CCHCS policy.[9]

24   FAC ¶¶ 105, 111, 115, 232.  Taken together, these allegations do not show reckless

25   regard to Jane Doe No 1's safety or a causal connection, and thus fail to state a claim.  As

26   for the allegations about the IAC meetings, as with Core, plaintiffs fail to allege that

27        [9]      Plaintiffs allege CCHCS policy regarding the referral of sexual abuse

28   allegations to the ISU violated 15 Cal. Code. Reg. § 3486.  FAC ¶ 232.

1  Kettle did not take any actions after learning about the IAC's unspecified concerns about

2  Lee. As such, the allegations are insufficient to state a deliberate indifference claim

3  based on supervisory liability against Kettle.

4      Accordingly, in Claim Three, plaintiffs only state an Eighth Amendment claim

5  against Elliot, Maxwell, Hill, Core, and Houston.

6      ## 2. __Fourteenth Amendment – Equal Protection (Claim Four)__

7      As noted above, in Claim Four, plaintiffs allege Macomber, Allison, Gipson,

8  Toche, and Aref intentionally discriminated against them on the basis of their gender in

9  both their official and individual capacities. Plaintiffs assert the CDCR ignored the

10 mandates of California Penal Code § 3430, which established the Female Offender

11 Programs and Services ("FOPS") to ensure that the women's prisons operated in a

12 gender-responsive manner. *Id*. ¶¶ 336-37. Plaintiffs allege these defendants knew about

13 CDCR's failure to comply with Penal Code § 3430 and the resulting risk of sexual,

14 physical, and emotional abuse to CIW inmates, yet they repeatedly prioritized the needs

15 of the men's prisons in order to dilute the FOPS mission or resources. *See id.* ¶¶ 338-40.

16 CDCR defendants argue Claim Four should be dismissed because plaintiffs fail to allege

17 any facts that demonstrate intentional discrimination against them based on gender.[10]

18 CDCR MTD at 16-17.

19     Under the Equal Protection clause of the Fourteenth Amendment, "all persons

20 similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473

21 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To state a claim for violation of

22 the Equal Protection Clause, a plaintiff must allege facts showing that the defendant

23 "acted with an intent or purpose to discriminate against him based upon his membership

24 in a protected class." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003). Race and

25

26 _____

27     [10]    Claim Four does not appear to be supervisory liability claim. Nonetheless, because CDCR defendants move to dismiss it as one and plaintiffs respond accordingly,

28 the court addresses it in this section.

1  sex are protected classes for the purposes of the Equal Protection Clause.  *See Monterey*

2  *Mech. Co. v. Wilson*, 125 F.3d 702, 707 (9th Cir. 1997).

3         Plaintiffs fail to allege any facts showing discriminatory acts, much less an intent

4  to discriminate against women.  Plaintiffs contend they allege circumstantial evidence of

5  intentional discrimination, but simply point to conclusory allegations unsupported by any

6  factual allegations.  *See* Opp. CDCR MTD at 20-21.  For example, allegations that

7  Macomber, Allison, Gipson, Toche, and Aref "repeatedly took action to dilute the FOPS

8  mission by saddling FOPS with oversight of the men's prisons or issues that

9  predominantly impact the men's prisons" and "repeatedly prioritized the needs of the

10  incarcerated population at the men's prisons while intentionally diluting the FOPS

11  mission or diverting resources away from FOPS in ways that predominantly benefit the

12  men's prisons" are conclusory and insufficient.  FAC ¶¶ 339-40; *see Jones v. Cmty.*

13  *Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (finding conclusory allegations

14  unsupported by facts insufficient to state a claim under § 1983).  Plaintiffs "must allege

15  with at least some degree of particularity overt acts which defendants engaged in that

16  support the plaintiff's claim[s]."  *Id.* (internal quotation marks and citation omitted).  The

17  only allegation of a specific action concerns Macomber's alleged decision to "charge

18  FOPS with the responsibility of overseeing and implementing COVID protocols in all

19  state prisons in 2020."  FAC ¶ 273.  But this allegation does not show intentional

20  discrimination.

21         Accordingly, the court grants CDCR defendant's motion to dismiss Claim Four.

22         **3.  <u>Fourth Amendment – Right to Privacy (Claim Seven)</u>**

23         In Claim Seven, plaintiffs Jane Does Nos.1-5 and CCWP allege defendants Elliot,

24  Maxwell, Macomber, Gipson, Allison, Kent, Parker, Core, Houston, Montes, Hill, Kettle,

25  Gonzalez, and Doe Defendants violated their Fourth Amendment right to privacy, bodily

26  integrity, and bodily privacy.  FAC ¶¶ 363-68.  Plaintiffs assert their Fourth Amendment

27  rights were violated as a result of these defendants' failure to properly respond to

28

allegations of staff sexual misconduct and take proper disciplinary and other actions to prevent harm.

The Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).  This includes the right to be secure from "the invasion of bodily privacy in prisons." *Bull v. Cty. & Cnty. of San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc).

As an initial matter, plaintiffs state Claim Seven was mistakenly pleaded against Gipson and Allison instead of Toche.  Opp. CDCR MTD at 18 n.9.  Plaintiffs therefore agree to dismiss Gipson and Allison from this claim but request leave to amend.

As plaintiffs concede, Claim Four is supported by the same factual allegations underlying their Eighth Amendment claim (Claim Three).  Opp. CDCR MTD at 18.  Thus, the same analysis applies.  Regarding Macomber, Kent, Parker, Montes, Kettle, and Gonzalez – this claim suffers from the same defects as Claim Three.  Plaintiffs fail to allege facts establishing knowledge and/or a causal link between these defendants and the constitutional violations.  But as discussed above, plaintiffs adequately allege facts demonstrating Elliot, Maxwell, Hill, Core, and Houston knew about the complaints against Lee and failed to proper action, and their failure to act allowed Lee to continue to engage in misconduct.[11]

The court therefore grants CDCR defendants' motion to dismiss Claim Seven as to Gipson, Allison, Macomber, Kent, Parker, Montes, Kettle, and Gonzalez.

In sum, with regard to the supervisory liability claims, the court dismisses Claim Three as against Macomber, Toche, Kent, Gonzalez, Parker, Montes, and Kettle; Claim Four; and Claim Seven as against Gipson, Allison, Macomber, Kent, Parker, Montes, Kettle, and Gonzalez.

---

[11]    As discussed below, the court dismisses Jane Doe No. 2's Fourth Amendment claims against Lee.

1    **F.    Cruel and Unusual Punishment (Claim Two)**

2        In Claim Two, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Lee violated the

3    Eighth Amendment by sexually, physically, and emotionally abusing plaintiffs, and

4    failing to provide appropriate care, and Chand and Lopez violated their Eighth

5    Amendment rights by actively assisting Lee or failing to intervene or report him.[12]    FAC

6    ¶ 321.  Lee argues Jane Doe #2 fails to state an Eighth Amendment claim against him

7    either by his acts or as a deliberate indifference to medical care claim.  Lee MTD at 9-12.

8        As discussed above, the Eighth Amendment prohibits sexual harassment or abuse

9    by prison staff.  *See Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

10   "Whether a particular event or condition in fact constitutes 'cruel and unusual

11   punishment' is gauged against 'the evolving standards of decency that mark the progress

12   of a maturing society.'"  *Id*. at 1196 (citation omitted).  Jane Doe No. 2 alleges that Lee

13   became angry and hostile when she refused to let him perform a pap smear and he made

14   inappropriate comments, including "I know you don't have a problem having anything

15   inside of you."  FAC ¶ 123.  As a result, she got a "creepy feeling" from Lee and

16   eventually refused future appointments.  FAC ¶¶ 124, 126.  Although inappropriate and

17   offensive, "the Eighth Amendment's protections do not necessarily extend to mere verbal

18   sexual harassment."  *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004); *see*

19   *Benjamin v. Stevens Cnty.*, 839 F. App'x 100, 101 (9th Cir. 2020) (daily sexually

20   inappropriate statements were inappropriate and unacceptable but did not rise to the level

21   of an Eighth Amendment violation).  Thus, Jane Doe No. 2's allegations fail to state an

22   Eighth Amendment violation against Lee on the basis of sexual harassment.

23        To the extent the FAC also alleges an Eighth Amendment violation based on

24   inadequate medical treatment (*see* FAC ¶ 321(k)), allegations of inadequate medical

25   treatment by prison officials may also give rise to a civil rights claim under the Eighth

26   Amendment if a plaintiff can show that the defendants acted with "'deliberate

27   _____

     [12]    Plaintiffs assert Claim Two against Doe Defendants, but the claim contains

28   no factual allegations about Doe Defendants.

indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).  To state a deliberate indifference to medical needs claim, a plaintiff must satisfy two requirements.  First, the deprivation or harm suffered by the prisoner must have been "'sufficiently serious,'" that is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834 (citations omitted).  In the case of a medical need, the prisoner must establish a "serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096 (citation and internal quotation marks omitted).  Second, the prison official must know of and disregard an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 836-37.

The FAC here contains no allegations showing Jane Doe No. 2 had a serious medical need or suffered a serious harm.  Jane Doe No. 2 alleges she had hot flashes and needed gynecological care, but refused care for over three years due to fear of being seen by Lee.  FAC ¶¶ 125-26.  Although the lack of medical care could have proved serious, plaintiffs allege no facts indicating that was the case here.  The FAC therefore fails to state an Eighth Amendment claim based on deliberate indifference to medical needs as to Jane Doe No. 2.

As such, Claim Two is dismissed as to Jane Doe No. 2.

## G.   Invasion of Privacy (Claim Six)

In Claim Six, plaintiffs Jane Doe Nos. 1-5 allege Lee, Chand, Lopez, and Doe Defendants violated their Fourth Amendment right to be free from sexual abuse, sexual assault, and sexual harassment.  Lee moves to dismiss the claim as to Jane Doe No. 2 and plaintiffs agree to her removal.  Opp. Lee MTD at 11.  The court therefore dismisses Claim Six as to Jane Doe No. 2.

## H.   Gender Violence (Claim Eight)

In Claim Eight, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Lee, Chand, Lopez, and Doe Defendants committed acts of gender violence in violation of California Civil

Code § 52.4(c)(2).  CDCR defendants move to dismiss the claim against Chand and
Lopez, and Lee moves to dismiss Claim Eight as to Jane Doe No. 2.

To state a claim for gender violence under § 52.4(c)(2), a plaintiff must show that a
defendant personally committed a "physical intrusion or physical invasion of a sexual
nature under coercive conditions."  Cal. Civ. Code § 52.4(c)(2); *see Doe #2 v. Johnson*,
2024 WL 4437725, at *3 (E.D. Cal. Oct. 7, 2024); *Doe v. Pasadena Hosp. Ass'n*, 2020
WL 1244357, at *8 (C.D. Cal. Mar. 16, 2020).  Here, plaintiffs' claim against Chand and
Lopez is premised on their physical presence in the examination room, their bringing
plaintiffs into the examination room and instructing them to undress, Chand assisting Lee
in restraining Jane Doe No. 3's legs, and their failure to intervene or report Lee.  FAC
¶ 374.  Other than allegations of Chand's assistance in restraining Jane Doe No. 3's legs,
none of these allegations show a physician intrusion or invasion.  And although the FAC
adequately alleges a physical act by Chand as to Jane Doe No. 3, the facts do not show
that Chand's actions were of a sexual nature.  Plaintiffs therefore fail to state a gender
violence claim against Chand and Lopez.

As for Jane Doe No. 2, plaintiffs agree to dismiss Jane Doe No. 2 from Claim
Eight.  Opp. Lee MTD at 11.

Accordingly, the court dismisses Claim Eight against Chand and Lopez, and
dismisses Jane Doe No. 2's gender violence claim against Lee.

## I.    **Bane Act (Claim Nine)**

In Claim Nine, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Elliot, Maxwell,
Kent, the Warden defendants, Kettle, Gonzalez, Lee, Chand, and Lopez violated the Bane
Act, Cal. Civ. Code § 52.1.  Plaintiffs allege Lee coerced them, including the Direct
Abuse and Denial of Care Classes, into seeing him for treatment and abused them, with
Chand and Lopez's assistance, in violation of the Eighth Amendment, Fourteenth
Amendment, and California Constitution, Article I, § 17.  Plaintiffs allege Elliot,
Maxwell, Kent, the Warden defendants, Kettle, and Gonzalez were deliberately
indifferent towards their safety.  Elliot, Maxwell, Kent, the Warden defendants, Kettle,

and Gonzalez move to dismiss this claim.[13]  Lee moves to dismiss this claim as to Jane
Doe No. 2.

"The Bane Act civilly protects individuals from conduct aimed at interfering with
rights that are secured by federal or state law, where the interference is carried out 'by
threats, intimidation or coercion.'" *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040
(9th Cir. 2018) (citation omitted).  In order state a claim under the Bane Act a plaintiff
must establish: (1) defendant interfered with or attempted to interfere with plaintiff's
constitutional or statutory rights by threatening or committing violent acts; (2)
plaintiff reasonably believed defendant would commit violence against plaintiff's
property if plaintiff exercised that right, or that the defendant injured plaintiff or their
property to prevent plaintiff from exercising that right or retaliated against plaintiff for
exercising such right; (3) plaintiff was harmed; and (4) defendant's conduct was a
substantial factor in causing plaintiff harm.  *Austin B. v. Escondido Union Sch. Dist.*, 149
Cal. App. 4th 860, 882, 57 Cal. Rptr. 3d 454 (2007) (citing the Judicial Council of
California Civil Jury Instructions).  A plaintiff also must allege the defendant had specific
intent to violate their constitutional rights.  *See Sandoval v. Cnty. of Sonoma*, 912 F.3d
509, 520 (9th Cir. 2018); *Rodriguez*, 891 F.3d at 800; *Reese*, 888 F.3d at 1043.

As an initial matter, this claim is confusing because plaintiffs' allegations concern
certain groups – Direct Abuse and Denial of Care classes – but they are undefined.[14]
Aside from Jane Doe Nos. 1-5, it is unclear whose rights plaintiffs allege Lee, Chand, and
Lopez violated.

Citing *Estate of Chivrell v. City of Aracta*, 623 F. Supp. 3d 1032, 1045 (N.D. Cal.
2022), CDCR defendants move to dismiss Claim Nine against Elliot, Maxwell, Kent, the
Warden defendants, Kettle, and Gonzalez on the basis that they were not present during

---

[13]    CDCR defendants did not move to dismiss the Bane Act claim as to Chand
and Lopez.

[14]    By contrast, other proposed classes or subclasses are defined.  *See* FAC
¶¶ 288-92.

the alleged sexual abuse.  CDCR MTD at 19-20.  But as CDCR defendants concede in
their reply, the basis for this argument is inapplicable.  CDCR Reply at 16.  *Chivrell*
concerned the lack of standing to assert a Bane Act claim for those not present during the
violative acts and is not relevant to the argument raised by the CDCR defendants.
Because CDCR defendants raised no other argument to dismiss Claim Nine, their motion
to dismiss Claim Nine against Elliot, Maxwell, Kent, the Warden defendants, Kettle, and
Gonzalez is denied. [15]

     As for Lee's motion to dismiss Jane Doe No. 2, the court has already found that the
FAC fails to state an Eighth Amendment claim (Claim Two) against Lee as to Jane Doe
No. 2 and plaintiffs agree to remove Jane Doe No. 2 from the Fourth Amendment claim
(Claim Six).  The FAC therefore also fails to state a Bane Act claim based on a
constitutional violation.  In the Opposition, plaintiffs allege the Bane Act claim is also
based on Lee's alleged interference with Jane Doe No. 2's right to privacy under the
California Constitution, Article I, § 13 – specifically, Lee allegedly performed a pap
smear even though Jane did not have a cervix.  Opp. Lee MTD at 8.  But the FAC does
not allege a Bane Act violation based on a violation of the California Constitution,
Article I, § 13.[16]  Moreover, the FAC alleges Lee did *not* perform a pap smear on Jane

---

[15]    In the Reply, CDCR defendants argue Elliot, Maxwell, Kent, the Warden
defendants, Kettle, and Gonzalez should be dismissed because there is no supervisory
liability under the Bane Act.  CDCR Reply at 16.  But "arguments raised for the first time
in a reply brief are waived."  *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010).  The
court additionally notes that district courts in this Circuit are divided as to whether there
is supervisory liability under the Bane Act.  *See Estate v. Valentine v. Cnty. of Merced*,
2024 WL 4374303, at *43 (E.D. Cal. Oct. 2, 2024); *Estate of Chivrell v. City of Aracta*,
694 F. Supp. 3d 1218, 1231-32 (N.D. Cal. 2023); *see also Peltz v. City of L.A.*, 2022 WL
18278417, at *1 (C.D. Cal. Dec. 5, 2022) (California courts have not explicitly addressed
this issue).

[16]    The court notes plaintiffs conceded Jane Doe No. 2 was not properly pled
and should be removed from the invasion of privacy claim under Article I, § 1 of the
California Constitution (Claim 15).  Opp. Lee MTD at 11.

Doe No. 2 so there could not have been an invasion of bodily privacy.  *See* FAC ¶¶ 121-24.  At bottom, plaintiffs allege Lee made an inappropriate sexual comment to Jane Doe No. 2.  In most cases, speech alone is not sufficient to support a Bane Act claim, unless the speech threatens violence.[17]  Cal. Civ. Code § 51.2(k) *see Gonzalez v. City of Modest-Modesto Police Dep't*, 2022 WL 463242, at *4 (E.D. Cal. Feb. 15, 2022).  Plaintiffs therefore failed to state a Bane Act claim against Lee as to Jane Doe No. 2.

Accordingly, the court dismisses Claim Nine as to Jane Doe No. 2.

## J.    Ralph Act (Claim 10)

In Claim Ten, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Lee, Chand, Lopez, and Doe Defendants committed violent acts against the undefined Direct Abuse Class in violation of the Ralph Act.  CDCR defendants move to dismiss the Ralph Act claim against Chand and Lopez.  CDCR MTD at 16-17.  Lee moves to dismiss the claim as to Jane Doe No. 2 and joins in a portion of CDCR defendants' argument as discussed below.  Lee MTD at 14-15; Joinder at 2-3.

The Ralph Act guarantees all persons within California "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51." Cal. Civ. Code § 51.7(b)(1).  To state a claim under the Ralph Act, a plaintiff must show: (1) the defendant committed or threatened violent acts against plaintiff; (2) defendant was motivated by his or her perception of plaintiff's sex; (3) plaintiff was harmed; and (4) defendant's conduct was a substantial factor in causing the plaintiff harm.  *Campbell v. Feld Enter., Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014).

---

[17]    Plaintiff's citation to *Whitworth v. City of Sonoma*, 2004 WL 2106606, at *6-*7 (Cal. Ct. App. Sept. 22, 2004), is incorrect.  *See* Opp. Lee MTD at 8, n.5. *Whitworth* does not quote *Black Lives Matter-Stockton Chapter v. San Joaquin Cnty. Sheriff's Office*, 398 F. Supp. 3d 660, 680-81 (E.D. Cal. 2019).  It is the inverse.

Plaintiffs agree Jane Doe No. 2 and Doe Defendants should be removed from Claim 10 and that the Ralph Act claim should be dismissed as against Chand and Lopez, except for Jane Doe Nos. 1 and 3's claims.  Opp. Lee MTD at 11; Opp. CDCR MTD at 23.  But the factual allegations are also insufficient to state Jane Doe Nos. 1 and 3's Ralph Act claim against Chand and Lopez.  The only physical or "violent" act alleged was Chand's assistance in holding Jane Doe No. 3's legs during the insertion of the IUD.  FAC ¶ 133.  But the FAC fails to allege any facts that show Chand and Lopez were motivated by their perception of plaintiffs' sex.

Lee joins in CDCR defendants' argument that the Ralph Act claim should be dismissed against him because plaintiffs failed to allege his misconduct was motivated by his perception of plaintiffs' sex.  Joinder at 2.  Lee's alleged acts focused on plaintiffs' sex organs and breasts.  *See* FAC ¶¶ 103, 134, 142-45, 163-65.  These acts could not have been perpetrated on a man.  Moreover, the Ninth Circuit has found that acts of sexual harassment are "inescapably 'because of sex.'"  *Rene v. MGM Grand Hotel, Inc.,* 305 F.3d 1061, 1066 (9th Cir. 2002) (discussing sexual harassment in Title VII context).  The FAC therefore sufficiently states a Ralph Act claim against Lee as to the remaining plaintiffs.

Accordingly, the Ralph Act claim against Chand and Lopez is dismissed, and the Ralph Act claim against Lee as to Jane Doe No. 2 is dismissed.

## K.    Civil Battery (Claim 11)

In Claim Eleven, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Lee, Chand, Lopez, and Doe Defendants committed civil battery against them.  Plaintiffs now request Jane Doe No.2 be removed from the claim.  Opp. Lee MTD at 11.  As such, the court dismisses Jane Doe No. 2 from Claim Eleven.

## L.    Intentional Infliction of Emotional Distress (Claim 12)

In Claim Twelve, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Lee, Chand, Lopez, and Doe Defendants intentionally or recklessly caused them severe emotional distress.  Lee moves to dismiss this claim as to Jane Doe No. 2.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by defendants; (2) defendants intended to cause or recklessly disregarded the probability of causing emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) plaintiff's severe distress was actually and proximately caused by defendant's conduct. *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 810 (9th Cir. 2024); *Barsell v. Urban Outfitters, Inc.*, 2009 WL 1916495, at *5 (C.D. Cal. Jul. 1, 2009); *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 832, 166 Cal. Rptr. 3d 242 (2013). For conduct to be outrageous, it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Vasquez*, 222 Cal. App. 4th at 832. In order to avoid dismissal, "plaintiff must allege with great specificity the acts which he or she believes are so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* (cleaned up).

Jane Doe No. 2's claim here appears to be premised on the comment Lee made after she refused to allow him to perform a pap smear – "I don't know why wouldn't let me examine you – I know you don't have a problem having anything inside of you." FAC ¶ 123. Ordinarily, "mere insulting language, without more, . . . would not constitute extreme outrage" unless it is combined with aggravated circumstances. *Smith v. BP Lubricants USA, Inc.*, 64 Cal. App. 4th 138, 148, 278 Cal. Rptr. 3d 587 (2021) (cleaned up); *see Hughes v. Pair*, 46 Cal. 4th 1035, 1051, 95 Cal. Rptr. 3d 636, 209 P. 3d 963 (2009) (inappropriate sexual comments fell "far short" of conduct so outrageous that it exceeds all bounds usually tolerated in a civil society). "But behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Smith*, 65 Cal. App. 5th at 147 (citation omitted).

Here, Lee's comment to Jane Doe No. 2 must be consider in the context that it was made by a prison physician with authority over Jane Doe No. 2 due to both his professional position and the fact that she was a prisoner.  In addition, plaintiffs allege that Jane Doe No. 2 is a child abuse survivor, and her interactions with Lee were retraumatizing, to the point that she eventually refused his medical care.  FAC ¶¶ 18, 124-27.  Although Lee may not have specifically known of the abuse Jane Doe No. 2 experienced as a child, plaintiffs allege prisoners are generally known to suffer from a high rate of prior sexual and other abuse.  FAC ¶ 306.  Under these circumstances, Lee's comment may be considered outrageous.  And although plaintiffs do not detail the harm to Jane Doe No. 2, they do allege she felt violated and ultimately refused gynecology care for over three years rather than be seen by Lee.  These allegations are sufficient to state a claim for intentional infliction of emotional distress.

Accordingly, the motion to dismiss Claim Twelve as to Jane Doe No. 2 is denied.

**M.**   **Negligent Infliction of Emotional Distress and Negligence (Claims 13 and 14)**

Plaintiffs assert claims of negligent infliction of emotional distress (Claim 13) and negligence (Claim 14) against Lee, Chand, Lopez, and Doe Defendants.  Lee moves to dismiss these claims as to Jane Doe No. 2 and the negligent infliction of emotional distress claim as to all plaintiffs.

In California, there is no independent tort of negligent infliction of emotional distress.  *Bates v. Hartford Life and Acc. Inc. Co.*, 765 F. Supp. 2d 1218, 1222 (C.D. Cal. 2011) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984, 25 Cal. Rptr. 2d 550, 863 P. 2d 795 (1993)); *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1264, 29 Cal. Rptr. 3d 521 (2005).  The tort is negligence.  *Bates*, 765 F. Supp. 2d at 1222.  To state a negligence claim, a plaintiff must allege: (1) defendant had an obligation "to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty);" (2) a breach of the duty; and (3) that the breach was the proximate or legal cause of the resulting injury.  *Downs v. Los*

*Angeles Sheriff's Dep't*, 2023 WL 9660661, at *14 (C.D. Cal. Oct. 16, 2023); *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629, 160 Cal. Rptr. 3d 684, 305 P.3d 252 (2013).

Here, plaintiffs allege Lee had a duty to them based on the doctor-patient relationship but fails to allege facts showing a breach of that duty. Without expressly alleging breach, plaintiffs allege Lee's conduct in abusing and assaulting them and the Direct Abuse Class and in denying or withholding care to those in the Denial of Care Class was negligent.[18]  FAC ¶¶ 403, 408. But the FAC does not contain any allegations of a breach of duty to Jane Doe No. 2. The factional allegations do not show abuse or the denial or withholding of care to Jane Doe No. 2.

As such, the court dismisses Claim Thirteen as to all plaintiffs and Claim Fourteen as to Jane Doe No. 2.

## N.    Invasion of Privacy (Claim 15)

In Claim Fifteen, plaintiffs Jane Doe Nos. 1-5 and CCWP allege Macomber, Allison, Gipson, Toche, Aref, Elliot, Maxwell, Lee, Chand, and Doe Defendants violated their right to privacy under the California Constitution.[19]  Plaintiffs allege Lee examined them without obtaining informed consent; Chand and Lopez assisted Lee, participated in the examinations knowing he was not providing appropriate care, and failed to intervene when witnessing Lee's actions; and Macomber, Allison, Gipson, Toche, Aref, Elliot, and Maxwell failed to take reasonable action to prevent harm. Lee moves to dismiss Claim Fifteen as to Jane Doe No. 2.

---

[18]    The allegations in Claim Thirteen are confusing because plaintiffs use several undefined terms – "Direct Abuse Class" and "Denial of Care Class" – and then change the subject classes from one paragraph to the next. *See* FAC ¶¶ 403-04.

[19]    The heading for Claim Fifteen does not state the claim is against Lopez. Because the allegations reference Lopez, this appears to be a typographical error and plaintiffs should clarify in any further amended complaint. *See* FAC ¶¶ 415-17, 420.

Plaintiffs request Jane Doe No. 2 be removed from Claim Fifteen.  Opp. Lee MTD at 11.  In addition, plaintiffs also dismiss Allison and Gipson.  Opp. CDCR MTD at 18, n.9.

As such, the court grants Lee's motion to dismiss Claim Fifteen as to Jane Doe No. 2 and dismisses the claim as to Allison and Gipson.

## O.  Dismissal of Class Claims Is Premature

Lee moves to dismiss class claims from all claims pled against him – Claims Two, Six, and Eight through Fifteen.  This is premature.  Class claims are rarely dismissed prior to a motion for class certification.  *See Pryor v. Aerotek Scientific*, LLC 2011 WL 13133757, at *4 n.25 (C.D. Cal. Mar. 14, 2011) (listing cases declining to dismiss class allegations prior to discovery and motion for class certification); *see, e.g., Rennick v. NPAS Sols., LLC*, 2020 WL 244170, at *2-*3 (C.D. Cal. Jan. 16, 2020) (declining to strike class allegations prior to a motion for class certification); *Ahmed v. HSBC Bank, USA, Nat'l Ass'n*, 2017 WL 5765734, at *3 (C.D. Cal. Nov. 6, 2017).  As such, the court denies Lee's motion to dismiss class claims at this juncture.

## P.  Possible Rule 8 Violations

As discussed through this Order, the FAC contains multiple ambiguities, inconsistencies and undefined terms.  Examples include:

- The FAC alleges Lee was a gynecologist at CIW from 2016 until May 2024 (FAC ¶ 23), he had been removed from his position by February 2024 (FAC ¶ 137), and he was removed from his position in November 2023 (FAC ¶ 227).
- The FAC alleges Elliot has served as the CEO of CIW since July 2010 (FAC ¶ 24), but also alleges all of the CIW wardens were CEO of CIW (FAC ¶¶ 26-30) and that Elliot was also CEO for CCHCS at CIW (FAC ¶¶ 36, 284).
- The FAC alleges Lee, Chand, and Lopez committed violent acts and unwanted contact against the "Direct Abuse Class" (FAC ¶¶ 388, 394), but "Direct Abuse Class" is undefined.

- The FAC alleges the "Denial of Care Class" was coerced into obtaining gynecological care from Lee (FAC ¶ 381), but "Denial of Care Class" is undefined.

Such inconsistencies and undefined terms make it difficult to determine the sufficiency of the claims.  In addition, it is not always clear whether a claim is an official capacity, supervisory liability, or personal liability claim.  Because, as discussed above, the court grants the motions to dismiss in part with leave to amend, plaintiffs should correct all ambiguities and inconsistencies in order to avoid violating Rule 8.

**V.**

**ORDER**

IT IS THEREFORE ORDERED that CDCR defendants' and Lee's motions to dismiss (docket nos. 52, 54, 55) are granted in part and denied in part as specified above. Jane Doe No. 2 is dismissed from Claims Two, Six, Eight through Eleven, and Thirteen through Fifteen.  Claims Four, Five, and Thirteen, as well as portions of Claims Three, Seven, Eight, Ten, and Fifteen, as specified above, are dismissed without prejudice. Defendants Elliot, Parker, Anthony, Aref, Toche, Kent, Gipson, and Allison are also dismissed from the official capacity claims.  Because the court is unable to determine at this juncture that amendment would be futile, leave to amend is granted.  *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

DATED:  January 13, 2026

SHERI PYM
United States Magistrate Judge