Dan Stormer, Esq. [S.B. # 101967]
Morgan Ricketts, Esq. [S.B. #268892]
Hadsell Stormer Renick & Dai LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Tel: (626) 585-9600 / Fax:  (626) 577-7079
Emails: dstormer@hadsellstormer.com
        mricketts@hadsellstormer.com

Jenny Huang, Esq. [S.B. #223596]
Justice First
490 43rd Street, # 108
Oakland, California 94609
Telephone: (510) 628-0695
Facsimile: (510) 605-3903
Email: jhuang@justicefirst.net

Barrett Litt, Esq. [S.B. # 45527]
Lindsay Battles, Esq. [S.B. # 26286]
McLane, Bednarski & Litt, LLP
975 E. Green Street
Pasadena, CA 91106
Tel: (626) 844-7660 / Fax: (626) 844-7670
Email: blitt@mbllegal.com
        lbattles@mbllegal.com

Attorneys for Plaintiffs

[Additional counsel continued on next page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| California Coalition for Women Prisoners, JANE DOES # 1 – 6, individually and on behalf of others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SCOTT LEE, M.D.; JAMES ELLIOTT; KENNETH MAXWELL; JEFF MACOMBER; DIANA TOCHE, M.D.; CONNIE GIPSON; ANGELA KENT; JENNIFER CORE; MONA HOUSTON; RICHARD MONTES; MOLLY HILL; M.A. MESVEEN CHAND; R.N. ROSA LOPEZ; and Does 1-20,<br><br>　　　　　Defendants. | Case No.: 5:25-cv-00283-SP<br><br>[Assigned to the Honorable Magistrate Judge Sheri Pym]<br><br>**PLAINTIFFS' CONSOLIDATED OPPOSITION TO CDCR DEFENDANTS' AND DR. LEE'S MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Hearing Date:　　July 28, 2026<br>Time:　　　　　11:00 a.m.<br>Courtroom:　　　4<br><br>Complaint filed:　February 2, 2025<br>Discovery cutoff:　None Set<br>Trial date:　　　None Set |

PLTFS' CONSOLIDATED OPP TO

DEFTS' MTNS TO DISMISS SAC

## TABLE OF CONTENT

**Page(s)**

TABLE OF AUTHORITIES..................................................................................iii

INTRODUCTION ..............................................................................................1

ARGUMENT ......................................................................................................1

   I.   Plaintiffs Have Adequately Pleaded A Fourteenth Amendment Equal
Protection Claim Against Macomber, Toche, Gipson, and Doe
Defendants..................................................................................................1

   II.  Plaintiffs Adequately Stated A Fourth Amendment Claim for
Unreasonable Search and False Imprisonment Against Dr. Lee,
Nurse Chand and Nurse Lopez ..................................................................6

   III.Plaintiffs Adequately Allege A Violation of the Fourteenth
Amendment's Right To Privacy ...............................................................10

      A. Plaintiffs Assert Privacy Violations Sufficient to Support
Fourteenth Amendment Due Process Claims ........................................10

      B. Plaintiffs May Pursue the Fourteenth Amendment Privacy
Claims Regardless of Whether They Avered the Precise
Fourteenth Theory Outlined Above .....................................................11

   IV. Plaintiffs' Fourth, Eighth and Fourteenth Amendment Claims
Against Macomber, Toche, Gipson, and Kent Is Adequately Pleaded ...............12

      A. Plaintiffs Have Pled Sufficient Facts to Reasonably Infer that the
CDCR Officials Were Personally Involved in Constitutional
Violations by Dr. Lee............................................................................13

      B. Alternatively, Plaintiffs Plead Sufficient Facts to Show a Causal
Relationship Between Actions/Inactions by the CDCR Officials
and Dr. Lee's Prolonged Abuse of Patients..........................................16

   V. Supervisory Liability Is Available for Bane Act Claims, and
Therefore Plaintiffs' Bane Act Claims Against Elliot, Maxwell,
Kent, Core, Houston, Montes, Hill, and Doe Defendants Should Not
Be Dismissed........................................................................................18

VI. Plaintiffs Have Adequately Stated Their Ralph Act Claim Against the Doe Defendants ................................................................................ 20

CONCLUSION ................................................................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*Ahn v. GEO Grp., Inc.*
No. 1:22-CV-00586-CDB, 2024 WL 1257260
(E.D. Cal. Mar. 25, 2024)..............................................................................19

*Alvarez v. Hill*
518 F.3d 1152 (9th Cir. 2008).......................................................................12

*Atayde v. Napa State Hosp.*
2016 U.S. Dist. LEXIS 126639 (E.D. Cal. Sep. 15, 2016).................................19, 20

*Atayde v. Napa State Hospital*
2016 WL 4943959 (E.D. Cal. Sept. 16, 2016)................................................20

*Bemis Bros. Bag Co. v. United States*
289 U.S. 28 (1933)........................................................................................12

*Blanco v. County of Kings*
142 F. Supp. 3d 986 (E.D. Cal. 2015)...........................................................11

*Brown v. Dickey*
117 F.4th 1 (1st Cir. 2024).............................................................................6

*Bukhari v. Hutto*
487 F.Supp. 1162 (E.D.Va. 1980)..................................................................3

*Byrd v. Maricopa Cnty. Sheriff's Dep't*
629 F.3d 1135 (9th Cir. 2011)........................................................................6

*Canedy v. Boardman*
16 F.3d 183 (7th Cir. 1994)............................................................................7

*Casey v. Lewis*
834 F.Supp. 1477 (D.Ariz. 1993)................................................................2, 3

*City of Cleburne v. Cleburne Living Ctr.*
473 U.S. 432 (1985).......................................................................................2

*Clayton v. Thurman*
No. 79-C-723-BT, 1983 U.S.Dist. LEXIS 14980
(N.D.Oak. Aug. 2, 1983)................................................................................2

*Coley v. Harris*
    30 F. Supp. 3d 428 (D. Md. 2014) ...................................................................................8

*Crull v. GEM Ins. Co.*
    58 F.3d 1386 (9th Cir. 1995)...........................................................................................12

*D.M. v. City of Merced*
    No. 1:20-cv-00409-JLT-SAB, 2024 WL 3540333
    (E.D. Cal. July 25, 2024).................................................................................................20

*Dann v. Studebaker-Packard Corporation*
    288 F.2d 201 (6th Cir. 1961)...........................................................................................12

*Desertrain v. City of Los Angeles*
    754 F.3d 1147 (9th Cir. 2014)..........................................................................................12

*Dillman v. Tuolumne County*
    1:13–cv–00404–LJO–SKO, 2013 WL 1907379
    (E.D. Cal. May 7, 2013)...................................................................................................19

*Dubbs v. Head Start Inc.*
    336 F.3d 1194 (10th Cir. 2003) .......................................................................................9

*Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.*
    764 F.2d 619 (9th Cir. 1985)............................................................................................12

*Ennenga v. Starns*
    677 F. 3d 766 (7th Cir. 2012) ..........................................................................................18

*Est. of Boscaino v. Adventist Health Hanford*
    2025 U.S. Dist. LEXIS 16181 (E.D. Cal. Jan. 29, 2025)..................................................19

*Fernandez v. Badami*
    2023 WL 2971771 (S.D.N.Y. Apr. 17, 2023)...................................................................8

*Fontana v. Haskin*
    262 F.3d 871 (9th Cir. 2001)............................................................................................10

*Galley v. Cnty. of Sacramento*
    No. 2:23-CV-00325 WBS AC, 2023 WL 4534205
    (E.D. Cal. July 13, 2023).................................................................................................19

*Gillespie v. Civiletti*
    629 F.2d 637 (9th Cir. 1980)............................................................................................18

PLTFS' CONSOLIDATED OPP TO
DEFTS' MTNS TO DISMISS SAC

-ii-

*Glover v. Johnson*
    478 F.Supp.1075 (E.D.Mich. 1979)............................................................2, 3

*Gordon v. District of Columbia*
    309 A.3d 543 (D.C. Cir. 2024)........................................................................9

*Grummett v. Rushen*
    779 F.2d 491 (9th Cir. 1985)........................................................................11

*Harrison v. Kernan*
    971 F.3d 1069 (9th Cir. 2020) .......................................................................3

*Hernandez v. Cate*
    918 F.Supp.2d 987 (C.D.Cal. 2012) ..............................................................3

*Hydrick v. Hunter*
    500 F.3d 978 (9th Cir. 2007) .......................................................................10

*Jane Doe I v. Valencia Coll. Bd. of Trs.*
    838 F.3d 1207 (11th Cir. 2016).................................................................9, 10

*Johnson v. City of Shelby, Miss.*
    574 U.S. 10 (2014) .......................................................................................11

*Keyes v. Washington Cnty.*
    2017 WL 3446256 (D. Or. Aug. 10, 2017).....................................................9

*Khamis v. Driscoll*
    2025 U.S. Dist. LEXIS 91237 (N.D. Cal. 2025).........................................18

*Kirchberg v. Feenstra*
    450 U.S. 455 (1981) .......................................................................................3

*Lee v. Downs*
    641 F.2d 1117 (4th Cir. 1981) ........................................................................7

*Loving v. Morton*
    2022 WL 2971989 (S.D.N.Y. 2022)...............................................................8

*Madrigal v. City of Santa Maria*
    2011 U.S. Dist. LEXIS 15294 (C.D. Cal. Feb. 7, 2011).............................22

*Maynard v. City of San Jose*
    37 F.3d 1396 (9th Cir. 1994) ..........................................................................2

PLTFS' CONSOLIDATED OPP TO
DEFTS' MTNS TO DISMISS SAC                     -iii-

*McCoy v. Nevada Dept. of Prisons*
  776 F.Supp. 521 (D.Nev. 1991) ...................................................................................4

*M.H. v. County of Alameda,*
  90 F.Supp.3d 889, 898–99 (N.D. Cal. 2013) ..........................................................20

*Michenfelder v. Sumner*
  860 F.2d 328 (9th Cir. 1986)......................................................................................7

*Mollica v. Cnty. of Sacramento*
  No. 2:19-CV-02017-KJM-DB, 2023 WL 3481145
  (E.D. Cal. May 16, 2023)..........................................................................................19

*Moreno v. L.A. Cty. Sheriff's Dep't*
  No. 2:13–cv–07570–CAS(MANx), 2015 WL 4652637
  (C.D. Cal. Aug. 3, 2015)...........................................................................................20

*Morse v. County of Merced*
  No. 1:16-cv-00142-DAD-SKO, 2016 WL 4000406
  (E.D. Cal. July 25, 2016)..........................................................................................19

*Personnel Adm'r of Massachusetts v. Feeney*
  442 U.S. 256 (1979) ....................................................................................................4

*Pinkston v. Orr*
  No. IP 81-1283-C, 1986 U.S.Dist. LEXIS 28266
  (S.D.Ind. March 12, 1986) ..........................................................................................2

*Rojas v. California Dep't of Corr. & Rehab.*
  No. 2:21-CV-01086 DAD AC, 2024 WL 584804
  (E.D. Cal. Feb. 13, 2024) ..........................................................................................19

*Schmerber v. California*
  384 U.S. 757, 86 S.Ct. 1826 (1966)............................................................................8

*Serrano v. Francis*
  345 F.3d 1071 (9th Cir. 2003) .....................................................................................2

*Shoar v. Cnty. of Santa Clara*
  No. C 22-00799 WHA, 2022 WL 10177673
  (N.D. Cal. Oct. 17, 2022) ..........................................................................................19

*Shroff v. Spellman*
  604 F.3d 1179 (10th Cir. 2010)..............................................................................7, 10

*Skinner v. Ry. Labor Executives' Ass'n*
  489 U.S. 602, 109 S.Ct. 1402 (1989).................................................................8

*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011)........................................................................13

*U.S. v. Chukwubike*
  956 F.2d 209 (9th Cir. 1992).........................................................................10

*United States v. Attson*
  900 F.2d 1427 (9th Cir. 1990)........................................................................10

*United States v. Jacobsen*
  466 U.S. 109 (1984)......................................................................................7

*United States v. Jones*
  565 U.S. 400, 132 S.Ct. 945 (2012)...............................................................7

*Victory v. Berks County*
  355 F.Supp.3d 239 (E.D.Pa. 2019) ..............................................................2

*Winarto v. Toshiba Am. Elecs. Components, Inc.*
  274 F.3d 1276 (9th Cir. Cal. 2001)...............................................................22

*Winston v. Lee*
  470 U.S. 753, 105 S.Ct. 1611 (1985)..............................................................8

*Wood v. Hancock County Sheriff's Department*
  354 F.3d 57 (1st Cir. 2003) ...........................................................................7

*Yin v. California*
  95 F.3d 864 (9th Cir. 1996) ...........................................................................9

*York v. Story*
  324 F.2d 450 (9th Cir. 1963)........................................................................11

**California Cases**

*Molar v. Gates*
  98 Cal.App.3d 1 (Cal. Ct. of App. 1979).......................................................5

*Shoyoye v. County of Los Angeles*
  203 Cal. App. 4th 947 (2012).......................................................................19

## Statutes and Authorities

Cal. Civ. Code
§ 51.7 ...................................................................................................................20, 21
§ 51.9 ...........................................................................................................................21
§ 52.1(a) .......................................................................................................................18
§ 52(b) ..........................................................................................................................21

Bane Act ...............................................................................................................*passim*

Federal Rules of Civil Procedure
Rule 8(a)(2) ..................................................................................................................11
Rule 12(g) .....................................................................................................................18
Rule 12(g)(2) .................................................................................................................18

Penal Code
§ 3430 .......................................................................................................................5, 17

**INTRODUCTION**

The SAC is adequately pleaded, and both Motions to Dismiss should be denied in their entirety.

Plaintiffs' Fourteenth Amendment equal protection claim is sufficiently pleaded because equal protection requires parity between male and female prisoners, but the SAC alleges dramatic disparities in medical care provided to female and male prisoners.

Plaintiffs Fourth Amendment claims should likewise survive because the Ninth Circuit has acknowledged that Defendants' primary case was implicitly overruled by the Supreme Court. Even if the Court determines that these claims are not cognizable under the Fourth Amendment, Plaintiffs allege sufficient facts to support a Fourteenth Amendment claim for violation of the right to privacy, and the Court is obligated to consider whether the facts are sufficient to support liability – not whether the precise legal theory is correct.

The SAC adequately alleges that each CDCR official was personally involved or engaged in wrongful conduct that caused the Fourth, Eighth and Fourteenth Amendment violations.

Finally, Plaintiffs adequately state both their state law Bane Act and Ralph Act claims.

**ARGUMENT**

I.  **Plaintiffs Have Adequately Pleaded A Fourteenth Amendment Equal Protection Claim Against Macomber, Toche, Gipson, and Doe Defendants**

This claim seeks to address the grave concern that Dr. Lee is the third gynecologist employed by CDCR who has been sued for sexual abuse by patients at one of CDCR's prisons for women. Dr. Ernest Reeves worked as the gynecologist at the Central California Women's Facility ("CCWF") for 14 years until he was sued by a patient whose claims of sexual abuse were supported by seven other patients. (ECF 87-1 at ¶¶ 51-60.) CDCR settled the lawsuit against Dr. Reeves in 2017, the same year that patients began reporting Dr. Lee for similar abusive conduct at CIW. (*Id.* at ¶¶ 51-60.)

In 2003, CDCR settled similar claims of sexual abuse against Dr. Bowman, who performed gynecological exams at the Valley State Prison for Women.[1] The claims against Dr. Lee in this case are indicative of a systemic pattern of intentional discrimination against female prisoners on the basis of gender (14th Amendment).

Under the Equal Protection Clause of the Fourteenth Amendment, all similarly situated persons should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Federal courts have long recognized that gender-based classifications in the prison setting are subject to the Equal Protection Clause.[2] To state an Equal Protection claim, Plaintiffs must allege that the defendants acted with an intent or purpose to discriminate based on their membership in a protected class. *Serrano v. Francis,* 345 F.3d 1071, 1082 (9th Cir. 2003). Intentional discrimination may be inferred by circumstantial evidence and can be established by showing that a defendant acted at least in part because of a plaintiff's protected status. *Maynard v. City of San Jose,* 37 F.3d 1396, 1404 (9th Cir. 1994); *Hernandez v. Cate,* 918 F.Supp.2d 987, 1006 (C.D.Cal. 2012). Gender-based claims are subject to intermediate scrutiny, requiring Defendants to show that the gender-based distinctions are substantially related to the achievement

---

[1] Valley State Prison for Women was CDCR's third prison for women, which operated from 1995 to 2013. Since 2013, CDCR has operated only two prisons for women (CIW and CCWF).

[2] *Victory v. Berks County,* 355 F.Supp.3d 239, 250-51 (E.D.Pa. 2019) (finding that programming for women inmates was not substantially equivalent to similarly situated male inmates under Equal Protection Clause); *Casey v. Lewis,* 834 F.Supp. 1477, 1551-52 (D.Ariz. 1993) (holding that equal protection requires that women prisoners have same levels of mental health treatment as male prisoners); *Pinkston v. Orr,* No. IP 81-1283-C, 1986 U.S.Dist. LEXIS 28266 at *27-28 (S.D.Ind. March 12, 1986) (finding equal protection violation in substantially different conditions of confinement for women in medical care, vocational training, and employment opportunities); *Clayton v. Thurman,* No. 79-C-723-BT, 1983 U.S.Dist. LEXIS 14980 at *31-32 (N.D.Oak. Aug. 2, 1983) (finding no parity of treatment for women prisoners in the area of job assignments and access to minimum security facilities); *Glover v. Johnson,* 478 F.Supp.1075, 1079 (E.D.Mich. 1979) (finding equal protection violation by lack of parity between men's and women's prisons in educational and vocational programs and in library resources).

PLTFS' CONSOLIDATED OPP TO DEFTS' MTNS TO DISMISS SAC

-2-

of important government objectives. *Harrison v. Kernan,* 971 F.3d 1069, 1076 (9th Cir. 2020). To satisfy this heightened standard of review, CDCR is required to show an "exceedingly persuasive justification" to uphold dissimilar treatment between male and female prisoners. *Kirchberg v. Feenstra,* 450 U.S. 455, 461 (1981).

Applying this heightened standard of review to prisoner cases, federal courts in the Ninth Circuit have required that female prisoners be treated in parity with male prisoners in the provision of physical and mental health services. Although the Equal Protection Clause does not require that men's and women's prisons have identical programs, they must be "substantially equivalent" with a parity of treatment between male and female prisoners. Any lack of parity in treatment can be justified by the state when its actions have a fair and substantial relationship to the purpose of incarceration. *Bukhari v. Hutto,* 487 F.Supp. 1162, 1172 (E.D.Va. 1980); *Glover v. Johnson,* 478 F.Supp.1075, 1079 (E.D.Mich. 1979). For instance, in *Casey v. Lewis,* female prisoners brought an Equal Protection claim against the Arizona Department of Corrections ("ADOC") for gender-based discrimination in the delivery of mental health care. *Casey v. Lewis,* 834 F.Supp. 1477, 1550-51 (D.Ariz. 1993). In support of that claim, the plaintiffs argued that male prisoners had access to a psychiatric hospital within ADOC and more advanced programming and facilities for mental health services, while female prisoners had no access to a psychiatric hospital within the department and limited programming when compared to male prisoners. The court rejected ADOC's argument that male prisoners required more mental health resources because they are more assaultive or predatory and found that drastic differences in access to mental health care for male and female prisoners amounted to an equal protection violation, in addition to a violation of Eighth Amendment rights. *Id.* at 1551.

Similarly, a federal court denied summary judgment on an Equal Protection claim, based on evidence showing gender disparities with the Nevada Department of Prisons in the provision of education opportunities, vocational training, visiting and phone privileges to prisoners, access to legal resources, and the conditions and

PLTFS' CONSOLIDATED OPP TO
DEFTS' MTNS TO DISMISS SAC
-3-

maintenance of prison buildings.[3] . *McCoy v. Nevada Dept. of Prisons,* 776 F.Supp. 521, 523-24 (D.Nev. 1991). In *McCoy,* the court held that to determine whether female prisoners were being treated in parity with male prisoners, courts should consider each prison condition that allegedly violates the Equal Protection Clause as it affects male and female prisoners. Where there is no legislation authorizing the gender disparate treatment, courts must evaluate "whether the adverse effect reflects invidious gender-based discrimination". *Id.* (quoting *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 274 (1979).

The Second Amended Complaint ("SAC") includes new allegations to establish the dramatic disparities in the provision of medical care to female prisoners as compared to male prisoners. Since 2013, male prisoners can access the California Health Care Facility ("CHCF") in Stockton, a 1.4 million square foot facility that includes 54 buildings for housing and medical treatment of CDCR's incarcerated population for men. CHCF provides housing and treatment for 2,951 incarcerated patients by a professional health care staff of 2,500 people. (ECF 87-2 at ¶¶ 273-74.) In stark contrast, Dr. Lee has been the sole gynecologist for the entire CIW population from 2016 to 2023, ranging from 1000-3000 patients. In the absence of any comparable medical facility like CHCF that is accessible to CDCR's female population, the SAC includes sufficient allegations to show gross disparities and the absence of parity between medical resources available to CDCR's female prisoners, as compared to male prisoners.

Plaintiffs sufficiently allege that Defendants Macomber, Toche, Gipson, and Kent personally participated in gender-based decision-making that severely undermined the FOPS mission, in favor of providing additional resources to male prisoners. Evidence that each of the CDCR officials participated in the dilution and dismantling of FOPS is

---

[3] Defendants' parenthetical on *McCoy* is misleading because the plaintiffs there had failed to submit evidence to support any gender disparity in the allocation of money from the Inmate Welfare Fund. In that respect, *McCoy* lends no support to Defendants' motion to dismiss, prior to any discovery on the Equal Protection claim.

PLTFS' CONSOLIDATED OPP TO
DEFTS' MTNS TO DISMISS SAC

-4-

not only evidence of their personal participation in a Fourteenth Amendment violation, but it also evidence of the context in which CDCR has discriminated against female prisoners. (ECF 89-2 at ¶¶ 277-278, 285.) Although the population of female prisoners comprises a small percentage of the overall prisoner population, California courts have long rejected "administrative convenience" or "administrative economy" as a valid justification for gender-based discrimination under the Fourteenth Amendment. *Molar v. Gates,* 98 Cal.App.3d 1, 20-23 (Cal. Ct. of App. 1979). Plaintiffs have also alleged facts to show that CDCR officials undermined the FOPS mission despite the recommendations of CDCR's own gender-responsive experts who attributed rampant sexual abuse of prisoners by staff to CDCR's lack of support of FOPS and its failure to comply with Penal Code section 3430. (ECF 89-2 at ¶¶ 282-286.) The CDCR Officials took such actions despite knowing that CIW patients had complained of sexual abuse by Dr. Lee. (*Id.* at ¶¶ 73, 90.) This Court should therefore deny the motion to dismiss the individual capacity claims against Defendants Macomber, Toche, Gipson, and Kent.

Defendants do not seek dismissal of the official capacity claim under the Fourteenth Amendment against Defendants Macomber, instead limiting their arguments to the lack of personal participation. (ECF No. 89-1 at pp. 13-14.) However, Plaintiffs need only identify the policy or custom that was the cause in fact or proximate cause of the constitutional violation and name Macomber as the official who can appropriately respond to the injunctive relief sought. (ECF 75 at pp. 21-22.) As Defendants acknowledge, Plaintiffs have alleged the following three customs or policies in support of their Equal Protection Claim: the failure to comply with (1) the 2008 Master Plan that was adopted pursuant to Cal. Penal Code § 3430, (2) the 2016 Women's Health Care Initiative that would resulted in a bona fide qualification for a female gynecologist at CIW, and (3) recommendations from CDCR's own trauma-informed experts about the need to prioritize the Female Offender Programs and Services. It should therefore be undisputed that the Equal Protection claim against Defendant Macomber in his official capacity should survive Defendants' motion to dismiss.

**II.   Plaintiffs Adequately Stated A Fourth Amendment Claim for Unreasonable Search and False Imprisonment Against Dr. Lee, Nurse Chand and Nurse Lopez**

Both Defendants Chand and Lopez, and Dr. Lee, argue that Plaintiffs' Fourth Amendment claim for unreasonable search and false imprisonment should be dismissed. Thus, Plaintiffs address these arguments together here.

The factual allegations in this case support Fourth Amendment claims. Plaintiffs assert that Defendant Lee – with the participation of Defendants Chand and Lopez – performed non-consensual, coerced, and/or medically unnecessary examinations and procedures, including pelvic and rectal examinations, and in some cases forcefully held down plaintiffs' legs, preventing them from escaping the procedure (and examination room). Defendants also required Plaintiffs to undress in front of Dr. Lee, forcing them to expose their intimate body parts. None of this intrusive conduct was performed for a legitimate medical purpose, but rather, for abusive purposes, including sexual gratification, shame and humiliation. The forced exposure of plaintiffs' bodies, forced examination of intimate body parts, and restraint on the examination table are cognizable under the Fourth Amendment.

Federal courts recognize a Fourth Amendment privacy interest in the exposure of prisoners' and detainees' intimate body parts. *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141 (9th Cir. 2011) (Fourth Amendment violation based on unreasonable cross-gender strip search; "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity."); *Brown v. Dickey*, 117 F.4th 1 (1st Cir. 2024) (male correctional officers observation of female inmate's naked body during hospital stay to deliver baby constituted a search under the Fourth Amendment *even though there was no evidence that officers were present for the purpose of collecting evidence of a crime*); *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) (nurse searched female prisoner's vagina in the presence of two male guards; [despite communal

aspects of prison life], "[m]ost people…have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon those confined in our prisons."); *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (in the context of cross-gender searches; "[o]ne of the clearest forms of degradation in Western Society is to strip a person of his clothes…"); *Shroff v. Spellman*, 604 F.3d 1179, 1191 (10th Cir. 2010)(where female arrestee was required to expose breasts to female cadet while providing breast milk for baby, recognizing "[i]n a civilized society, one's anatomy is draped with constitutional protections.").

Though Defendants insist otherwise, the bodily intrusions in this case qualify as searches. A search occurs where the government intrudes on a subject enumerated within the Fourth Amendment, such as a person. *United States v. Jones*, 565 U.S. 400, 132 S.Ct. 945, 950–51 & n.3 (2012); *see also United States v. Jacobsen*, 466 U.S. 109, 113 (1984) ("A Fourth Amendment 'search' occurs when the government infringes 'an expectation of privacy that society is prepared to consider reasonable.'").

Visual and/or physical examination of prisoners' bodies constitutes a search within the meaning of the Fourth Amendment. *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1986) (cross-gender strip searches implicate Fourth Amendment standards); *see also Wood v. Hancock County Sheriff's Department*, 354 F.3d 57, 63 (1st Cir. 2003) (a search occurs when a jail official inspects an incarcerated individual's naked body, regardless of whether the official intended or set out to do so).

The Fourth Amendment encompasses searches performed by medical professionals working with law enforcement and correctional officers. The Supreme Court has long recognized that bodily intrusions performed by medical professionals, including compelled blood and urine tests, implicate the Fourth Amendment. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616, 109 S.Ct. 1402 (1989) (citing *Winston v. Lee*, 470 U.S. 753, 760, 105 S.Ct. 1611 (1985); *Schmerber v. California*, 384 U.S.

757, 767–68, 86 S.Ct. 1826 (1966)).

In the jail and prison context, federal courts have repeatedly recognized that involuntary inspection of a prisoner's genitals by a *medical* professional constitutes a Fourth Amendment search. *See, e.g., Loving v. Morton*, 2022 WL 2971989, at *7–8 (S.D.N.Y. 2022) (characterizing a medical professional's examination of an inmate's naked body as part of the prison admissions process as a "strip search" for Fourth Amendment purposes); *Fernandez v. Badami*, 2023 WL 2971771, at *5 (S.D.N.Y. Apr. 17, 2023) (medical examination involving involuntary inspection of prisoner's testicles constitutes a search under the Fourth Amendment); *Coley v. Harris*, 30 F. Supp. 3d 428 (D. Md. 2014) (nurse's medical examination—undertaken for medical purposes—of naked prisoner after strip search could support Fourth Amendment claim for unreasonable search).

Citing the Ninth Circuit's decision in *United States v. Attson*, 900 F.2d 1427 (9th Cir. 1990), Defendants insist that bodily intrusions inflicted by Lee, Chand, and Lopez cannot qualify as searches because they were not undertaken to further the government's administrative or investigative purpose. *Attson*, 900 F.2d at 1433. The case involved a doctor's drawing a blood sample from an intoxicated driver for medical purposes. The Ninth Circuit concluded that no "search" had occurred because the doctor was not "motivated by investigatory or administrative purposes." *Id.* at 1430–31, 1433. Defendants' reliance on *Attson* is misplaced. First, *Attson* is inapposite because it addresses when a *private* actor's conduct is subject to the Fourth Amendment; it does not address conduct by a government employee and does not require an administrative or investigative purpose for government employees.

The word "search" in the Fourth Amendment does not contain a purpose requirement. The Supreme Court explained in *Soldal v. Cook County* why such a requirement would be anomalous:

> [T]he *reason* why an officer might enter a house or effectuate a seizure is *wholly irrelevant* to the threshold question whether the [Fourth] Amendment applies. What matters is the intrusion on the people's security from governmental

interference. Therefore, the right against unreasonable seizures would be no less transgressed if the seizure of the house was undertaken to collect evidence, verify compliance with a housing regulation, effect an eviction by the police, *or on a whim, for no reason at all*. As we have observed on more than one occasion, it would be "anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior."

506 U.S. 56, 69 (1992).

*Attson*'s reasoning thus flies in the face of *Soldal*, which the Supreme Court decided two years after *Attson*. Several federal decisions indeed recognize that *Soldal* implicitly overruled *Attson*. *Jane Doe I v. Valencia Coll. Bd. of Trs.*, 838 F.3d 1207, 1212–13 (11th Cir. 2016) (*Attson* not good law after *Soldal;* "flies in the face of the [Supreme Court's decision in] *Soldal*"); *Keyes v. Washington Cnty.*, 2017 WL 3446256, at *4–5 (D. Or. Aug. 10, 2017) (recognizing that *Soldal* implicitly overruled *Attson* because *Attson*'s holding turned on the governmental actor's subjective motivation for conducting a search). *See also Dubbs v. Head Start Inc.*, 336 F.3d 1194, 1205 (10th Cir. 2003) (vigorously disagreeing with *Attson*'s rationale because "the contention that the Fourth Amendment does not apply in the 'noncriminal' and 'noninvestigatory' context is without foundation."); *Gordon v. District of Columbia*, 309 A.3d 543, 554 n.6 (D.C. Cir. 2024) (rejecting *Attson*). Since *Attson*, the Ninth Circuit has held that people "have a legitimate expectation of privacy in being free from an unwanted medical examination, whether or not that examination entails any particularly intrusive procedures." *Yin v. California*, 95 F.3d 864, 871 (9th Cir. 1996).

Accordingly, federal courts have specifically recognized that involuntary inspection of a person's genitals by the government constitutes a "search" under the Fourth Amendment, even absent an investigatory or administrative purpose. *See Jane Doe I*, 838 F.3d at 1212–13 (11th Cir. 2016) (mandatory transvaginal ultrasounds for radiology students constituted a Fourth Amendment "search" regardless of any administrative or investigative purpose; "[I]nserting a probe into a woman's vagina is plainly a search when performed by the government."); *Shroff v. Spellman*, 604 F.3d

1179, 1191 (10th Cir. 2010) (Fourth Amendment violation where female arrestee was required to expose breasts to female cadet while pumping breast milk for baby).

Defendants' reliance on *Chukwubike* is also misplaced because none of the bodily invasions Plaintiffs endured were performed for legitimate medical purposes and therefore cannot be characterized as medical care exempt from Fourth Amendment scrutiny under the decision. *Chukwubike* involved life-saving medical treatment for a drug courier who was at risk of death after swallowing drugs to transport them. *U.S. v. Chukwubike*, 956 F.2d 209, 210 (9th Cir. 1992). Plaintiffs do not assert that Lee, Chand, and Lopez subjected female patients to invasions of their bodily privacy for legitimate medical purposes, or to provide medical care, but instead that Defendants subjected them to invasions of bodily privacy that were divorced from any legitimate medical or penological interest.

Finally, contrary to Lee's assertion, sexually abusive or harassing conduct does not escape Fourth Amendment scrutiny because it lacks a legitimate governmental purpose. *See Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) (Fourth Amendment prohibits purposeful verbal and physical sexual predation on an arrestee).

**III.   Plaintiffs Adequately Allege A Violation of the Fourteenth Amendment's Right To Privacy**

    **A.   Plaintiffs Assert Privacy Violations Sufficient to Support Fourteenth Amendment Due Process Claims**

Plaintiffs also allege privacy violations sufficient to support Fourteenth Amendment Due Process claims. In the Ninth Circuit, "[i]t is clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy ... the naked body.'" *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007) (citing *Grummett v. Rushen*, 779 F.2d 491, 493 (9th Cir. 1985) (recognizing due process right to privacy in prisons)). *See also York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963) ("[t]he desire to shield one's unclothed figure[ ] from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and

personal dignity."). This right encompasses cross-gender viewing of prisoners' and detainees' naked bodies without correctional justification. *See also Blanco v. County of Kings*, 142 F. Supp. 3d 986 (E.D. Cal. 2015) (Fourteenth Amendment violation where, absent an emergency, male law enforcement officer entered room while plaintiff was still undressed following a strip search in order to interrogate her).

Plaintiffs allege that Defendants Lee, Chand, and Lopez inflicted gratuitous privacy intrusions during examinations and procedures, including forcing patients to undress while Dr. Lee remained in the examination room, typically without any sort of divider or modesty covering. (Dkt. 87-1, pp. 54, 88, 96). There is no medical justification for requiring patients to undress in front of a doctor in non-emergency circumstances. To the contrary, universally accepted medical standards require gynecologists to adhere to draping protocols to protect patients' privacy during gynecological examinations and procedures. These violations are cognizable as Fourteenth Amendment Due Process claims, independent of Plaintiffs' Fourth and Eighth Amendment claims.

### B. Plaintiffs May Pursue the Fourteenth Amendment Privacy Claims Regardless of Whether They Averred the Precise Fourteenth Theory Outlined Above

Though the SAC did not specifically identify privacy violations as a Fourteenth Amendment violation, it contains facts sufficient to pursue this legal theory.

As the Supreme Court explained in *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (allowing § 1983 claim despite failure to allege § 1983), "Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. Rule Civ. Proc. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted . . . . [¶] Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more."

PLTFS' CONSOLIDATED OPP TO DEFTS' MTNS TO DISMISS SAC

-11-

Accordingly, "[t]he pleadings need only identify the basis of the court's jurisdiction, demand judgment for the relief sought, and contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. P. 8. The pleadings need not identify any particular legal theory under which recovery is sought." *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir. 1995).

And, as the Court explained in *Elec. Const. & Maint. Co., Inc. v. Maeda Pac. Corp.*, 764 F.2d 619, 622–23 (9th Cir. 1985):

> "It has long been established law that, in equity, a plaintiff is entitled to any relief appropriate to the facts alleged in the bill and supported by the evidence, even where he has not prayed for such relief." *Dann v. Studebaker-Packard Corporation*, 288 F.2d 201, 216 (6th Cir. 1961) (citing *Bemis Bros. Bag Co. v. United States*, 289 U.S. 28, 34 (1933)). As Wright & Miller state: "The complaint should not be dismissed merely because plaintiff's allegations do not support the legal theory he intends to proceed on, since the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory . . . ."

*See also Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014) (where plaintiffs fail to raise a claim properly in their pleadings, if they raised it in their motion for summary judgment, they should be allowed to incorporate it by amendment); *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008) ("it is sufficient that the complaint, alone or supplemented by any subsequent filings before summary judgment, provide the defendant fair notice that the plaintiff is claiming relief under RLUIPA as well as the First Amendment").

As a precautionary measure, Plaintiffs can address these issues in a Third Amended Complaint that specifically alleges Fourteenth Amendment claims.

## IV.   Plaintiffs' Fourth, Eighth and Fourteenth Amendment Claims Against Macomber, Toche, Gipson, and Kent Is Adequately Pleaded

As this Court previously held, Defendants Macomber, Toche, Gipson, and Kent ("the CDCR Officials") may be liable as a supervisor if either (1) they were personally involved in the constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. (ECF 75 at p.25 (quoting *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011).) The Second

Amended Complaint ("SAC") includes sufficient allegations to support both theories of supervisory liability against the CDCR Officials.

### A. Plaintiffs Have Pled Sufficient Facts to Reasonably Infer that the CDCR Officials Were Personally Involved in Constitutional Violations by Dr. Lee.

In response to the deficiencies identified by this Court on the Defendants' prior motion to dismiss, the SAC includes additional factual allegations to support of supervisory liability claims against the CDCR Officials.[4] Defendants notably omit any reference in their pending motion to the new (or prior) allegations about repeated concerns raised by members of the Inmate Advisory Council ("IAC") and the responses documented by several of the named defendants. Specifically, the SAC includes new allegations about a specific IAC meeting in July 2023 where IAC members once again raised widespread concerns about Dr. Lee's abusive conduct towards patients and advised that many patients were refusing gynecology care because he was the only gynecologist at CIW. (ECF 87-1 at ¶ 97.) Defendant Core, who served as CIW Warden from May 2022 to August 2023, was present at the July 2023 meeting and was presumably present at prior IAC meetings where members reported widespread concerns about Dr. Lee's abuse. (*Id.* at ¶¶ 26, 92, 94, 97.) Minutes from the July 2023 meeting document that Defendant Core's response to these concerns by stating that "the administration is aware of the concerns". Defendant Core further stated that "*she has discussed the concerns with medical leadership and headquarters*". (*Id.* at ¶ 97) (emphasis added).

Although it is not explicitly stated, it can be reasonably inferred from their titles that Defendants Macomber, Toche, Gipson, and Kent all worked in CDCR headquarters during Defendant Core's term as CIW Warden and would have been among those individuals with whom she discussed the concerns raised by IAC members about Dr.

---

[4] In response to this Court's order on Defendants' Motion to Dismiss the First Amended Complaint (ECF 75), Plaintiffs withdrew claims of supervisory liability under the Eighth Amendment against the following individuals: Lavelle Parker, Rob Kettle, and Luis Gonzalez.

Lee. (*Id.* at ¶¶ 32, 33-35.) As Core's direct supervisor, it is reasonable to infer that she would have included Angela Kent among her discussions with CDCR headquarters about Dr. Lee. (*Id.* at ¶¶ 33, 262.) Plaintiffs are awaiting a massive production of emails from Defendants that includes a search of Defendant Core's email account. This long-awaited production of documents is expected to reveal who in CDCR headquarters and medical leadership was included in Warden Core's discussions about Dr. Lee and whether those communications included Defendants Kent, Gipson, Macomber, and Toche. (ECF 84 at pp. 83-84; ECF 84-2 at pp. 68-70.)

As Undersecretary of Health Care Services, Diana Toche was the official in CDCR headquarters who had overall responsibility for medical care at all of CDCR's prisons and is reasonably inferred to have been among those with whom Warden Core discussed the concerns about Dr. Lee. Defendants argue that a high-ranking headquarters-level official like Dr. Toche would not have known about the concerns raised by the IAC about Dr. Lee. However, an article available on CDCR's website about Dr. Toche documents that as the longest-tenured member of CDCR headquarters, Dr. Toche has been to each CDCR prison multiple times. On her visits to each prison, the article states that Dr. Toche seeks to be brought up to speed on the medical care concerns at the prison by walking through each prison's yard, clinic, and housing units and "sitting down more formally with the Inmate Advisory Councils."[5]

The SAC includes allegations about the separate meetings that IAC members had with medical leadership about Dr. Lee. New allegations in the SAC reference an IAC meeting on July 5, 2023, at which Defendant Jim Elliot reported that CIW had approval for only one OB-GYN. (ECF 87-1 at ¶ 98.) Along with allegations that Defendant Elliot had known about patient complaints against Dr. Lee for many years, it is reasonable to infer that Elliot had discussed the need for additional staffing for a female gynecologist

---

[5] CDCR's article entitled "Health Care Services Undersecretary leads through pandemic", dated March 14, 2022, is accessible only at https://www.cdcr.ca.gov/insidecdcr/2022/03/14/undersecretary-of-health-care-services-leads-throughout-pandemic/.

PLTFS' CONSOLIDATED OPP TO DEFTS' MTNS TO DISMISS SAC

-14-

at CIW with his superiors, including correctional health and executive leadership in CDCR headquarters that would include Defendant Dr. Toche. Plaintiffs are still awaiting a pending and massive production of emails by Defendants that include a search of Defendant Elliot's email account that will reveal whether any of Elliot's communications about Dr. Lee included Defendant Toche, as well as Defendants Macomber, Kent, and Gipson.  (ECF 84 at pp. 83-84; ECF 84-2 at pp. 70-71.)

The Motion's complete failure to acknowledge and address these specific allegations about the IAC meetings speaks volumes. The IAC minutes not only document that Defendants Core, Hill, and Elliot knew about the widespread patient complaints about Dr. Lee, but that Defendants Core and Elliot had discussed these complaints about Dr. Lee with their superiors, including medical leadership and CDCR headquarters. (ECF 87-1 at ¶¶ 92-98.) These are far from conclusory allegations that warrant the dismissal of the CDCR officials. While individual complaints of staff misconduct may not ordinarily involve such high-level officials, Plaintiffs have pled facts to show that these were hardly individual or isolated patient complaints. To the contrary, the complaints against Dr. Lee had become so pervasive that they were raised by IAC members on behalf of the incarcerated population at CIW and became the subject of discussion among CDCR executive staff and headquarters and the medical leadership of CDCR.

The SAC not only shows that patient complaints of abuse by Dr. Lee were well-known and widespread as of 2023, it also includes new allegations about multiple patient complaints against Dr. Lee before 2023 that were the subject of investigations by CIW, the Medical Board of California, and litigation. (ECF 87-1 at ¶¶ 86-90.) These allegations were not isolated or individual complaints by a prisoner against prison staff. Rather, these complaints were serious allegations of sexual abuse by multiple patients against the sole gynecologist at one of the two state prisons for women. In light of CDCR's proclaimed zero tolerance for staff sexual abuse of prisoners, it is inconceivable that the moving defendants were not aware of and did not participate in

PLTFS' CONSOLIDATED OPP TO
DEFTS' MTNS TO DISMISS SAC

-15-

actions/inactions that led to the prolonged sexual abuse of patients by Dr. Lee. In light of pleadings which show that Defendants Macomber, Toche, Gipson, and Kent held medical leadership and CDCR executive positions during the relevant time period, the SAC includes sufficient allegations from which it can be reasonably inferred that these Defendants were personally notified and involved in Dr. Lee's well-known abuse of patients.

New allegations in the SAC about a January 2023 letter from Dr. Barbara Owen to Defendant Macomber show that as CDCR Secretary, Macomber was in fact personally notified about staff sexual abuse at CDCR's prisons for women and the root causes that created the climate within CDCR for rampant sexual abuse by prison staff. (ECF 87-2 at ¶¶ 282-83.) Plaintiffs also pled new facts to show that Defendant Macomber relied on Defendant Connie Gipson, as Director of CDCR's Division of Adult Institutions, to receive and respond to Dr. Owen's concerns, thereby establishing that Defendant Gipson was personally notified in 2023 about incidents of sexual abuse at CDCR's prisons for women. Based on these allegations, one can reasonably infer that both Defendants Macomber and Gipson would been notified and personally involved in prior allegations about Dr. Lee throughout their tenure in CDCR's executive leadership.[6]

### B. Alternatively, Plaintiffs Plead Sufficient Facts to Show a Causal Relationship Between Actions/Inactions by the CDCR Officials and Dr. Lee's Prolonged Abuse of Patients.

Evidence of their acquiescence or culpable indifference to Dr. Lee's abuse of patients is demonstrated by the actions and inactions taken by the CDCR Officials to undermine and eventually destroy CDCR's female mission, known as the Female Offender Programs and Services ("FOPS"). (ECF 87-1 at ¶¶ 268-88.) Contrary to

---

[6] Defendants correctly note that Defendant Macomber did not become the Secretary of CDCR until 2022. However, as CDCR's Undersecretary of Operations from 2020-2022, Macomber oversaw the daily management and security at all of CDCR's prisons, including its two prisons for women.

Defendants' characterization, the facts alleged regarding the FOPS mission are not alleged as evidence of notice to or participation by the CDCR Officials. Rather, such allegations show that they were deliberately indifferent to the known risk of sexual violence at CDCR's prisons for women, including their specific knowledge about Dr. Lee and the concerns raised by the Inmate Advisory Council at CIW.

In support of the second theory for supervisory liability, Plaintiffs pled new allegations to show that these actions/inactions by the CDCR Officials were the cause of Dr. Lee's prolonged abuse of patients at CIW. In no uncertain terms, a nationally recognized expert in gender responsive strategies informed Defendants Macomber and Gipson about the causal relationship between (a) CDCR's failure to comply with Penal Code § 3430 and the FOPS Mission, and (b) the rampant sexual abuse in CDCR's two prisons for women. Specifically, Dr. Owen opined in her letter to Macomber that CDCR's longstanding neglect and lack of support for FOPS "*created* the climate for staff mistreatment of women under their supervision." (ECF 87-2 at ¶ 282 (emphasis added).) The SAC includes new allegations to show that CDCR was required to seek the input from trauma-informed experts like Dr. Owen, Stephanie Covington, and Barbara Bloom, long before 2023. (*Id.* at ¶¶ 269-272, 275-281.) Through many years of disregard for the recommendations by CDCR's own consultants, Plaintiffs have alleged sufficient facts to show that the CDCR Officials are liable for creating a culture and environment at CIW where patient complaints of abuse against Dr. Lee were ignored and neglected over the course of seven years.

At this early stage of discovery, the dismissal of Doe Defendants is not warranted. As the Ninth Circuit has recognized in a case cited by the moving Defendants, Plaintiffs should be given the opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not reveal the identities of Doe Defendants. ECF 89-1 at p.11 (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).) In light of the expected and massive production of emails concerning patient complaints about Dr. Lee, any dismissal of the Doe Defendants would be

premature, an abuse of discretion, and contrary to Ninth Circuit law. *Id.* at 643.

**V.    Supervisory Liability Is Available for Bane Act Claims, and Therefore Plaintiffs' Bane Act Claims Against Elliot, Maxwell, Kent, Core, Houston, Montes, Hill, and Doe Defendants Should Not Be Dismissed**

It is improper to raise new arguments on successive motions to dismiss. Rule 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."). The Seventh Circuit has explained that "[t]he policy behind Rule 12(g) is to prevent piecemeal litigation in which a litigant moves to dismiss on one ground, loses, then files a second motion on another ground." *Ennenga v. Starns*, 677 F. 3d 766, 773 (7th Cir. 2012). The Ninth Circuit has recognized this general rule as well. *Khamis v. Driscoll*, 2025 U.S. Dist. LEXIS 91237 at *4 (N.D. Cal. 2025) ("Generally, a party may not bring a new challenge to a claim in a second motion to dismiss if the challenge could have been raised in a previous motion to dismiss.".

Regardless, Plaintiffs' deliberate indifference claims are sufficient to support claims under the Bane Act.

The California Bane Act protects against interference "by threat, intimidation, or coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "[T]he relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct." *Dillman v. Tuolumne County*, 1:13–cv–00404–LJO–SKO, 2013 WL 1907379, at *20 (E.D. Cal. May 7, 2013); *see also Morse v. County of Merced*, No. 1:16-cv-00142-DAD-SKO, 2016 WL 4000406, at *1–2 (E.D. Cal. July 25, 2016). A cognizable Bane Act claim requires alleged conduct that is "more egregious" than "mere negligence." *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012).

As the court in *Galley v. Cnty. of Sacramento*, No. 2:23-CV-00325 WBS AC,

PLTFS' CONSOLIDATED OPP TO
DEFTS' MTNS TO DISMISS SAC

-18-

2023 WL 4534205, at *5 (E.D. Cal. July 13, 2023), summarized: "[M]ultiple district courts have adopted the position that 'a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs adequately states a claim for relief under the Bane Act.' ") (collecting cases); *see also Rojas v. California Dep't of Corr. & Rehab.*, No. 2:21-CV-01086 DAD AC, 2024 WL 584804, at *5 (E.D. Cal. Feb. 13, 2024), *report and recommendation adopted in part, rejected in part on other grounds*, 2024 WL 3467065 (E.D. Cal. July 19, 2024); *Ahn v. GEO Grp., Inc.*, No. 1:22-CV-00586-CDB, 2024 WL 1257260, at *6 (E.D. Cal. Mar. 25, 2024); *Mollica v. Cnty. of Sacramento*, No. 2:19-CV-02017-KJM-DB, 2023 WL 3481145, at *14 (E.D. Cal. May 16, 2023); *Shoar v. Cnty. of Santa Clara*, No. C 22-00799 WHA, 2022 WL 10177673, at *2–3 (N.D. Cal. Oct. 17, 2022).

As the Eastern District of California has noted, threats, intimidation, and coercion for Bane Act purposes are inherent in deliberate indifference claims, which extend far beyond an ordinary tort claim." *Est. of Boscaino v. Adventist Health Hanford*, 2025 U.S. Dist. LEXIS 16181 at *21 (E.D. Cal. Jan. 29, 2025), citing *Atayde v. Napa State Hosp.*, 2016 U.S. Dist. LEXIS 126639 at *23 (E.D. Cal. Sep. 15, 2016) ("The court premises this conclusion on the fact that mere indifference, negligence, or medical malpractice will not support a claim for deliberate indifference. Rather, a plaintiff must allege and show a purposeful act or failure to respond to a prisoner's pain or possible medical need.") (internal quotes and citations omitted).

There is a "developing majority rule" on this issue. *Est. of Boscaino v. Adventist Health Hanford*, 2025 U.S. Dist. LEXIS 16181 at *22 (E.D. Cal. Jan. 29, 2025). The "developing majority rule" is stated as follows:

> Plaintiffs bringing Bane Act claims for deliberate indifference to serious medical needs must only allege prison officials "knowingly deprived [them] of a constitutional right or protection through acts that are inherently coercive and threatening," such as housing a prisoner in an inappropriate cell, failing to provide treatment plans or adequate mental health care, and failing to provide sufficient observations.

*Id.*, citing *D.M. v. City of Merced*, No. 1:20-cv-00409-JLT-SAB, 2024 WL 3540333, at *17 (E.D. Cal. July 25, 2024); see also *Atayde v. Napa State Hospital*, 2016 WL 4943959, at *7–8 (E.D. Cal. Sept. 16, 2016) (*comparing M.H. v. County of Alameda*, 90 F.Supp.3d 889, 898–99 (N.D. Cal. 2013), *with Moreno v. L.A. Cty. Sheriff's Dep't*, No. 2:13–cv–07570–CAS(MANx), 2015 WL 4652637, at *18 (C.D. Cal. Aug. 3, 2015) ).

## VI.     Plaintiffs Have Adequately Stated Their Ralph Act Claim Against the Doe Defendants

The Ralph Act protects the right to be free from both "violence" and "intimidation by threat of violence" directed against a person or property because of a protected characteristic. Cal. Civ. Code § 51.7.

The SAC alleges completed acts of violence against Plaintiffs' person, including:

- forcible vaginal penetration,
- forceful insertion of speculums,
- restraint of Plaintiffs' legs during examinations,
- forced continuation of examinations after Plaintiffs pleaded for the examinations to stop,
- anal penetration without consent,
- aggressive physical touching,
- coercive invasive gynecological procedures,
- and retaliatory conduct tied to refusals of treatment and complaints of abuse.

The SAC also alleges intimidation and coercion sufficient to support a threatened-violence theory. Dr. Lee was the only gynecologist available at CIW for years; Plaintiffs believed refusal of treatment would result in denial of necessary medical care; Plaintiffs continued submitting to examinations despite fear and trauma; Plaintiffs avoided necessary gynecological treatment because of fear of Dr. Lee and institutional retaliation; and prisoners who reported abuse faced threats of retaliation, disciplinary action, transfers, solitary confinement, and denial of care.

The Ralph Act is not limited to direct perpetrators alone. Pursuant to Civ. Code § 52(b), "[w]hoever denies the right provided by Section 51.7 or 51.9, **or aids, incites, or conspires in that denial**, is liable for each and every offense for the actual damages suffered by any person denied that right…" Thus, Plaintiffs' allegations that Doe Defendants aided, facilitated, ignored, concealed, ratified, failed to investigate, or failed to intervene in ongoing violence and intimidation are sufficient to support liability under the Ralph Act.

The SAC alleges specific conduct by unidentified or non-physician institutional actors, including:

- unidentified nurse chaperones "consistently failed to observe or report DR. LEE's actions" (SAC ¶ 21);

- unidentified officials ignored repeated complaints regarding abusive gynecological examinations and sexual abuse (SAC ¶ 5, ¶ 50, ¶ ¶ 56, ¶¶ 72-73, ¶ 80, ¶ 81, ¶ 94, ¶ 215, ¶ 336, etc);

- unidentified investigators conducted or approved deficient investigations into repeated complaints of sexual abuse during gynecological examinations (SAC ¶ 84, ¶ 86, ¶ 88, ¶ 117, ¶ 212, ¶ 217, ¶ 226, ¶ 229, etc);

- unidentified institutional personnel allegedly permitted Dr. Lee to remain the only gynecologist at CIW despite repeated complaints and known allegations of sexual abuse and coercive gynecological practices (SAC ¶ 5, ¶ 6, ¶ 20, ¶ 47, ¶ 79, ¶ 81, ¶ 87, ¶ 89, ¶ 91, ¶ 95, ¶ 97, ¶ 98, ¶ 107, ¶ 113, ¶ 150, ¶ 171, ¶ 191, ¶ 331, ¶ 324, ¶ 347, ¶ 373, ¶ 375, etc).

As evidenced above, Plaintiffs make numerous concrete allegations against Doe Defendants.

Detailed factual allegations supporting discriminatory inference are sufficient for Ralph Act claims at the pleading stage. *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276 (9th Cir. Cal. 2001); see also *Madrigal v. City of Santa Maria*, 2011 U.S. Dist. LEXIS 15294 (C.D. Cal. Feb. 7, 2011).

The SAC includes allegations supporting a reasonable inference that Doe Defendants knowingly facilitated, tolerated, concealed, ratified, or failed to stop violence and intimidation directed at incarcerated women and gender-nonconforming prisoners because of sex- and gender-linked characteristics, including:

- Defendants knew incarcerated women had extraordinarily high rates of prior sexual abuse and trauma: "A Department of Justice study found that 86% of those incarcerated in women's jails reported having experienced sexual violence in their lifetime and 77% reported partner violence.4 For prisons, research has shown an even higher rate (up to 94%) who experienced sexual and/or physical abuse prior to incarceration." (SAC ¶ 49)

- "With such high rates of prior sexual abuse history among female prisoners, Defendants knew or should have known that trauma-informed care is essential to the provision of safe gynecology services to prisoners" (SAC ¶¶ 48-49);

- Defendants nevertheless ignored repeated complaints regarding abusive gynecological examinations and sexual abuse (see above); and

Defendants knowingly allowed coercive gynecological practices to continue in a women's prison despite repeated notice of harm and intimidation.

## CONCLUSION

With the exception of the claims which Plaintiffs have abandoned and stipulate may be dismissed, Defendants' Motion to Dismiss should be denied in its entirety.

Dated: June 30, 2026

Respectfully Submitted,
JUSTICE FIRST
HADSELL STORMER RENICK & DAI LLP
McLANE, BEDNARSKI & LITT, LLP

By:  /s/ - Morgan Ricketts
Dan Stormer
Morgan Ricketts
Jenny Huang
Barrett Litt
Lindsay Battles
Attorneys for Plaintiffs

PLTFS' CONSOLIDATED OPP TO DEFTS' MTNS TO DISMISS SAC

-22-

## **Certificate of Compliance**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6998 words, which complies with the word limit of L.R. 11-6.1

Dated: June 30, 2026

/s/-  Morgan Ricketts
Morgan Ricketts

PLTFS' CONSOLIDATED OPP TO
DEFTS' MTNS TO DISMISS SAC

-23-